ACCEPTED
04-15-00087-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/6/2015 7:31:17 PM
KEITH HOTTLE
CLERK

## No. 04-15-00087-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

3/6/2015 7:31:17 PM

KEITH E. HOTTLE
Clerk

**IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO**

**ESTATE OF SHIRLEY L. BENSON;**

**THOMAS MILTON BENSON
AS TRUSTEE OF THE
SHIRLEY L. BENSON TESTAMENTARY TRUST,**
*Appellant*,

**v.**

**RENEE BENSON,**
*Appellee*.

**Appeal from Probate Court No. 2, Bexar County, Texas,
Trial Court Cause 155,172 & 155,172-A**

# BRIEF OF APPELLANT

**BECK REDDEN LLP**
David J. Beck
State Bar No. 00000070
Russell S. Post
State Bar No. 00797258
rpost@beckredden.com
Troy Ford
State Bar No. 24032181
tford@beckredden.com
Owen J. McGovern
State Bar No. 24092804
omcgovern@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720 (Fax)

**COUNSEL FOR APPELLANT, THOMAS MILTON BENSON, JR.,
AS TRUSTEE OF THE SHIRLEY L. BENSON TESTAMENTARY TRUST**

***Oral Argument Requested***

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANT:**

Thomas Milton Benson, Jr., as Trustee of the Shirley L. Benson Testamentary Trust

**COUNSEL FOR APPELLANT ON APPEAL AND IN THE TRIAL COURT:**

David J. Beck
Russell S. Post
Troy Ford
Owen J. McGovern
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010

**COUNSEL FOR APPELLANT IN THE TRIAL COURT:**

Phillip A. Wittmann
(Admitted *pro hoc vice* in probate court)
STONE PIGMAN WALTHER
	WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3558

**APPELLEE:**

Renee Benson

**COUNSEL FOR APPELLEE ON APPEAL AND IN THE TRIAL COURT:**

Bennett L. Stahl
CURL STAHL GEIS
700 N. St. Mary's Street, Suite 1800
San Antonio, TX 78205

Harriet O'Neill
LAW OFFICE OF HARRIET O'NEILL, P.C.
919 Congress Avenue, Suite 1400
Austin, Texas 78701

Emily Harrison Liljenwall
SCHOENBAUM, CURPHY &
	SCANLAN, P.C.
112 E. Pecan, Suite 3000
San Antonio, Texas 78205

Douglas Alexander
ALEXANDER, DUBOSE, JEFFERSON &
	TOWNSEND LLP
515 Congress Ave., Suite 2350
Austin, Texas 78701

**TRIAL COURT:**

Judge Tom Rickhoff
Bexar County Probate Court #2
100 Dolorosa, Room 117
San Antonio, TX  78205-3002

1884.1/557750

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL ................................................................i

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ..................................................................................v

STATEMENT OF THE CASE ..............................................................................ix

STATEMENT REGARDING ORAL ARGUMENT ....................................................x

ISSUES PRESENTED.........................................................................................xi

STATEMENT OF FACTS .....................................................................................1

SUMMARY OF ARGUMENT ................................................................................7

ARGUMENT .....................................................................................................9

    I.    Without evidence of a material breach of trust, neither a temporary injunction nor a receivership is appropriate. ......................9

        A.    Both temporary injunctions and receiverships require evidence of a breach of trust. .................................................9

            1.    To suspend a Trustee, Petitioner must demonstrate both a material breach of trust and material financial harm. ......................................9

            2.    Receivership likewise requires a breach of trust. ...........10

        B.    No evidence indicates a breach of trust. ...............................11

            1.    Lone Star Capital Bank..................................................13

            2.    Bensco, Inc. and Uptown Blanco, Ltd...........................15

            3.    Moving the bookkeeper. ................................................16

            4.    Lack of communication. .................................................18

            5.    Discontinuance of monthly disbursement and replacement of board of directors.................................19

C. Because there is no evidence of a breach of trust, this Court should reverse and render a decision denying Petitioner's application. ...........................................................21

II. Neither a temporary injunction nor a receivership can be defended under the requirements of equity. ........................................21

A. Both temporary injunctions and receiverships demand serious judicial restraint. ...........................................................22

1. Petitioner must demonstrate irreparable harm to receive either a temporary injunction or a receivership. .................................................................22

2. Receivership also requires evidence that no less invasive equitable remedy—such as a temporary injunction—is adequate. ................................24

B. Petitioner's failure to show any irreparable harm is fatal to both her temporary injunction and receivership claims. ....................................................................................25

1. Petitioner has presented no evidence of "harm." ...........25

2. Petitioner presented no evidence that her alleged injuries were "irreparable." ...............................26

C. Even if Petitioner demonstrated irreparable harm, the temporary injunction and receivership are overbroad and unnecessarily intrusive. ......................................................29

III. The trial court's Orders are facially flawed and void. ........................31

A. Lack of notice. ................................................................................33

1. Mr. Benson never received notice or a hearing on Petitioner's application to appoint receivers or its subsequent amendments to that Order. ....................34

2. Mr. Benson never received notice of the grounds for Petitioner's application to appoint receivers. .............35

3. The trial court's continued *ad hoc* alteration of its Order denies Mr. Benson notice of its basis and the ability to effectively be heard on his objections. ...................................................................36

B. The Second Amended Order is facially void. ...........................38

PRAYER .................................................................................................41

CERTIFICATE OF SERVICE .....................................................................42

CERTIFICATE OF COMPLIANCE ..............................................................43

APPENDIX

Order Suspending Trustee & Appointing Temporary Co-Receivers with Restrictions (CR 67 – 83) .................................................Tab A

Addendum to Order (CR 84 – 88) ...........................................Tab B

Amended Order Granting Injunction, Suspending Trustee & Appointing Limited Temporary Co-Receivers with Restrictions (CR 98 – 109) .......................................................................Tab C

Second Amended Order Granting Injunction, Suspending Trustee & Appointing Limited Temporary Co-Receivers with Restrictions (Supp CR 4 – 17) ..............................................................Tab D

Notice of Accelerated Interlocutory Appeal (CR 110 – 112) .................Tab E

(Amended) Notice of Accelerated Interlocutory Appeal (2 Supp CR _[1]) ...................................................................... Tab F

Second Amended Notice of Accelerated Interlocutory Appeal (2 Supp CR _) .....................................................................Tab G

Last Will and Testament of Shirley L. Benson (PX1) ...........................Tab H

---

[1] The Second Supplement to the Clerk's Record has been requested has not yet been filed.

# TABLE OF AUTHORITIES

CASE                                                                          PAGE(S)

*Alpert v. Riley*,
   274 S.W.3d 277 (Tex. App.—Houston
   [1st Dist.] 2008, pet. denied)................................................................19

*Ballenger v. Ballenger*,
   694 S.W.2d 72 (Tex. App.—Corpus Christi
   1985, no writ)....................................................................................28

*Benefield v. State*,
   266 S.W.3d 25 (Tex. App.—Houston
   [1st Dist.] 2008, no pet.) ...............................................9, 21, 24, 27

*Chapa v. Chapa*,
   04-12-00519-CV, 2012 WL 6728242
   (Tex. App.—San Antonio Dec. 28, 2012, no pet.) ...........................24

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*,
   136 S.W.3d 227 (Tex. 2004) ...........................................................20

*Cunningham v. Parkdale Bank*,
   660 S.W.2d 810 (Tex. 1983) ...........................................................33

*Di Portanova v. Monroe*,
   229 S.W.3d 324 (Tex. App.—Houston
   [1st Dist.] 2006, pet. denied)...............................................13, 19, 20

*Easton v. Brasch*,
   277 S.W.3d 558 (Tex. App.—Houston
   [1st Dist.] 2009, no pet.) .................................................................11

*Elliott v. Weatherman*,
   396 S.W.3d 224 (Tex. App.—Austin
   2013, no pet.) .................................................... 23, 24, 29, 33, 34, 35

*Fortis Benefits v. Cantu*,
   234 S.W.3d 642 (Tex. 2007) ...........................................................11

*Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*,
  281 S.W.3d 215 (Tex. App.—Fort Worth
  2009, pet. denied)..............................................................10

*Gonzales v. Tex. Employment Com'n*,
  653 S.W.2d 308 (Tex. App.—San Antonio
  1983), *writ refused NRE* (Dec. 14, 1983) ...................33, 34

*Hughes v. Marshall Nat. Bank*,
  538 S.W.2d 820 (Tex. Civ. App.—Tyler
  1976), writ dismissed w.o.j.) .......................................16, 33

*Indep. Am. Sav. Ass'n v. Preston 117 Joint Venture*,
  753 S.W.2d 749 (Tex. App.—Dallas
  1988, no writ)..................................................................24

*Int'l Broth. of Elec. Workers Local Union 479*
  *v. Becon Const. Co., Inc.*,
  104 S.W.3d 239 (Tex. App.—Beaumont
  2003, no pet.) ..................................................................39

*Intercont'l Terminals Co., LLC*
  *v. Vopak N. Am., Inc.*,
  354 S.W.3d 887 (Tex. App.—Houston
  [1st Dist.] 2011, no pet.) ...................................................9

*InterFirst Bank San Felipe, N.A. v. Paz Const. Co.*,
  715 S.W.2d 640 (Tex. 1986) ...........................................38

*Jones v. Blume*,
  196 S.W.3d 440 (Tex. App.—Dallas
  2006, pet. denied)............................................................12

*Khaledi v. H.K. Global Trading, Ltd.*,
  126 S.W.3d 273 (Tex. App.—San Antonio
  2003, no pet.) ...............................................................9, 22

*Lagos v. Plano Econ. Dev. Bd., Inc.*,
  378 S.W.3d 647 (Tex. App.—Dallas
  2012, no pet.) .............................................................23, 29

*Loftin v. Martin*,
  776 S.W.2d 145 (Tex. 1989) ...........................................33

*Markel v. World Flight, Inc.*,
   938 S.W.2d 74 (Tex. App.—San Antonio
   1996, no writ)..................................................................................25, 26

*Mueller v. Beamalloy, Inc.*,
   994 S.W.2d 855 (Tex. App.—Houston
   [1st Dist.] 1999, no pet.) ......................................................................11

*Ritchie v. Rupe*,
   443 S.W.3d 856 (Tex. 2014) ................................................................11

*Sw. Research Inst. v. Keraplast Technologies, Ltd.*,
   103 S.W.3d 478 (Tex. App.—San Antonio
   2003, no pet.) .......................................................................................23

*Tom James Co. v. Mendrop*,
   819 S.W.2d 251 (Tex. App.—Fort Worth
   1991, no writ)........................................................................................22

*In re Toyota Motor Sales, U.S.A.*,
   407 S.W.3d 746 (Tex. 2013) ................................................................33

*Tuma v. Kerr County*,
   336 S.W.3d 277 (Tex. App.—San Antonio
   2010, no pet.) ..................................................................................38, 39

*Twyman v. Twyman*,
   01-08-00904-CV, 2009 WL 2050979
   (Tex. App.—Houston [1st Dist.]
   July 16, 2009, no pet.)..........................................................................22

*Univ. Interscholastic League v. Torres*,
   616 S.W.2d 355 (Tex. Civ. App.—San Antonio
   1981, no writ)..................................................................................38, 39

*Walker v. Packer*,
   827 S.W.2d 833 (Tex. 1992) .................................................................27

*Williams v. Dep't of Criminal Justice-Institutional Div.*,
   04-03-00774-CV, 2004 WL 28660
   (Tex. App.—San Antonio Jan. 7, 2004, pet. denied) ...........................25

STATUTES

Civil Practice and Remedies Code § 64.001(a) ......................................................10

Tex. Civ. P. & Rem. Code § 64.001(b) .................................................................11

TEX. CIV. PRAC. & REM. CODE 64.203.................................................................3

TEX. PROP. CODE
    § 113.051.....................................................................................................12
    § 113.082.....................................................................................................10
    § 113.082(a)(1) ...........................................................................................11
    § 113.151.....................................................................................................18
    § 114.001(b) ...............................................................................................15
    § 114.001(c) ...............................................................................................27
    § 114.008(a)(3) ...........................................................................................28
    § 114.008(a)(5) ...........................................................................................11


RULES

TEX. R. CIV. P.
    680..............................................................................................................31
    682..............................................................................................................11
    683........................................................................................................23, 38
    695a..............................................................................................................3


OTHER AUTHORITIES

65 Am. Jur. 2d Receivers § 10 .............................................................................24

BLACK'S LAW DICTIONARY 976 (6th ed. 1990) ....................................................12

Ken Belson,
    *A Messy Family Battle for New Orleans Teams*,
    N.Y. TIMES, Mar. 6, 2015 ...................................................................................7

RESTATEMENT (SECOND) OF TRUSTS § 173 cmt. d..................................................18

RESTATEMENT (THIRD) OF TRUSTS § 37 cmt. e. ..............................................12, 18

# STATEMENT OF THE CASE

*Nature of the case*     Petitioner filed a petition seeking (1) removal of her father as trustee of a trust in which she is a beneficiary and (2) naming herself in his place.

*Course of proceedings*     Upon filing her petition, Petitioner sought a temporary restraining order—*ex parte*—which the trial court granted. CR 23-27. At the subsequent hearing on the temporary injunction, the trial court announced *sua sponte* that it would appoint two receivers rather than issue a temporary injunction.

*Trial Court's Disposition*     The trial court signed an order appointing receivers on February 9, 2015. **Tab A**. The order said nothing about injunctive relief.

In addition, the court signed an Addendum to that order providing further background. **Tab B**. Not long thereafter—and without notice or further hearing—the court signed an amended order, expanding the scope of relief by adding a temporary injunction to the prior receivership order. **Tab C**.

Appellant, Mr. Benson, filed timely notices of appeal from both of these orders. **Tab E & F**. He then filed a motion to expedite the appeal with this Court and noted some irregularities with the case. In response—again without notice—the trial court signed yet another amended order. **Tab D**. Mr. Benson again filed a timely notice of appeal. **Tab G.**

## STATEMENT REGARDING ORAL ARGUMENT

This case urgently needs an expedited decision. Appellant welcomes the opportunity to present oral argument if it will be helpful to the Court and will assist in expediting the decision of this accelerated appeal, and in that event, his counsel stands ready to appear for oral argument at the Court's convenience.

That said, the trial court's errors can be readily identified based on the briefs, and time is of the essence. Appellant has not sought to stay the order under review because he does not wish to divert the resources of the Court to collateral matters; instead, he filed a motion to expedite this appeal in order to secure complete relief as quickly as possible and minimize the damage that is done to the Trust each day. For the same reason, the Court may determine that oral argument is unnecessary. Appellant entrusts that decision to the Court's discretion and stands ready to assist the Court as necessary.

# ISSUES PRESENTED

1. Did the trial court abuse its discretion by failing to require evidence supporting a breach of trust, as required to grant either a temporary injunction or receivership?

2. Did the trial court abuse its discretion by failing to require evidence of irreparable harm and failing to consider less-intrusive remedies, as required to grant either a temporary injunction or receivership?

3. Did the trial court abuse its discretion by (a) failing to provide notice and an opportunity to be heard before appointing a receiver, or (b) failing to state the reasons it found lesser-remedies inadequate, as required by Texas Rule of Civil Procedure 683?

# STATEMENT OF FACTS

This litigation started off as a simple trustee removal case. A daughter, Petitioner Renee Benson, was unhappy with her father, Thomas Milton Benson, Jr. The only thing unusual was the amount at stake. Mr. Benson is the trustee of the Shirley L. Benson Testamentary Trust ("Trust"), which according to his daughter has "substantial" assets. 1 CR 9. The daughter, who is one of the beneficiaries of the Trust, filed a petition alleging vague fears that someday, something might happen to damage the Trust. She sought to remove her father as trustee and to give herself control of all its assets. 1 CR 5-21.

But things quickly got off track. Although the facts in the Original Petition indicated—at the very most—minor and easily remedied oversights, 1 CR 9-12, the trial court signed an expansive *ex parte* TRO suspending Mr. Benson from taking any actions related to the Trust he has administered competently and loyally for almost 35 years. 1 CR 23-27.

Later, the trial court held an evidentiary hearing on Petitioner's request for a temporary injunction. 3 RR 5-303; 4 RR 5-178. Following the hearing, however, the trial court did not grant a temporary injunction as Petitioner requested. Rather, believing the appointment of a receiver was "a lesser restrictive option," 5 RR 14, than a narrowly tailored injunction, the trial court announced—for the first time— that it would be appointing two receivers to "assist" Mr. Benson as the Trustee, preventing him from taking on "more than he can bear." 1 Supp. CR 16-17.

This announcement was made without any notice that the trial court was considering such a drastic remedy; without any argument, briefing, or presentation of evidence on the issue; and without reference to the applicable principles of law. Making matters worse, the trial court declined to state any reasons for its decision to grant relief that had never been requested or discussed. 4 RR 168-69.

Ever since this sudden, unexpected announcement, the litigation has lost all semblance of due process. The trial court has continued to dribble out various additions and amendments to the order with tweaks here and clarifications there— trying to salvage an order that never should have been signed in the first place. Because this situation is so unusual, Mr. Benson will detail the various orders.

## I.    The Original Order

On Monday, February 9, 2015, after the evidence closed in the hearing on the temporary injunction, the parties reconvened to discuss the order the trial court planned to sign implementing the relief he had described on the preceding Friday. Mr. Benson objected to the proposed order, arguing that it was unwarranted, much broader than had been anticipated, and unnecessary to address the asserted harms. 5 RR 17. The trial court overruled these objections and signed an order styled the "Order Suspending Trustee & Appointing Temporary Co-Receivers with Restrictions." CR 77 ("Original Order"). It said nothing about injunctive relief.

The trial court added an "Addendum" to the order. CR 84. This Addendum purported to explain the appointment of the receivers. But it did not address the basic requirements for such an appointment. For example, there was no explanation why a lesser remedy would not work. Mr. Benson appealed. CR 110.

The newly-appointed Co-Receivers went quickly to work on their tasks—without even waiting until their bonds and the applicant's bond had been posted, which were conditions precedent to their appointment under the Original Order. *See* CR 78; TEX. CIV. PRAC. & REM. CODE 64.203; TEX. R. CIV. P. 695a. Before long, the Co-Receivers sent the trial court a letter asking him to expand their powers to reach additional assets.

## II.    The Amended Original Order

Without notice to Mr. Benson or an opportunity to be heard on this request, the trial court amended the Original Order. CR 98. But the trial court did not content itself with granting the Co-Receivers additional powers. It took the opportunity to expand the scope of the relief awarded, responding to Mr. Benson's objections at the previous hearing by adding a temporary injunction to the prior receivership order. Further, it expanded their power, granting them discretion "to determine the extent of co-ownership with assets held by others or other entities not before the court." CR 100. This order, restyled as an "Amended Order Granting Injunction, Suspending Trustee, and Appointing Limited Temporary Co-Receivers with Restrictions"—("Amended Order")—inserted language granting

injunctive relief, but failed to include the requirements of Texas Rules of Civil Procedure 683 and 684.

Mr. Benson filed an amended notice of appeal to challenge this Amended Order. CR 113. He also filed a motion to expedite the appeal in this Court.

In that motion, Mr. Benson noted the irregularities associated with this case and the Amended Order's failure to meet the requirements of Rules 683 and 684. This Court declined to expedite the appeal, but ordered the record to be filed without any extensions and instructed the parties to prosecute the appeal promptly.

## III. The Second Amended Original Order

Recognizing the problems with the Amended Order, Petitioner responded by submitting yet another amended order to the trial court in an effort to cure its errors. 2 Supp. CR _.[2] Mindful of what had already taken place, Mr. Benson sent the trial court a letter emphasizing that he should have "an opportunity to be heard before any further action is taken in this matter." 2 Supp. CR _. The trial court denied Mr. Benson that opportunity. Later that day—March 2, 2015—the trial court responded by once again amending its Order, restyled as the "Second Amended Order Granting Injunction, Suspending Trustee, and Appointing Limited Temporary Co-Receivers with Restrictions." 1 Supp. CR 4. Once again, Mr. Benson had no opportunity to be heard.

---

[2] The Second Supplement to the Clerk's Record has been requested but has not yet been filed.

Mr. Benson filed an amended notice of appeal.  2 Supp. CR _.

* * *

Because this controversy concerns the control of a trust, a bit of background on the Trust is in order.  Shirley L. Benson—wife of Trustee Thomas Benson and mother of Petitioner Renee Benson—died in November 1980.  Petitioner is the only surviving child of Mr. and Mrs. Benson.

Mrs. Benson's will transferred her residuary estate into a testamentary trust ("Trust") and named Mr. Benson as Trustee.  **Tab H.**  The Trust names Mr. Benson as the income beneficiary during his life, with the remainder passing to their children upon his death.  Under the trial court's March 10, 2000 Judgment Modifying Trust and Life Estate, Petitioner was named current permissible principal beneficiary and a remainder beneficiary of the Trust.  The other remainder beneficiaries are The Rita Mae LeBlanc Irrevocable Trust of 1991, The Ryan Joseph LeBlanc Irrevocable Trust of 1991, and The Dawn Marie Benson Irrevocable Trust of 1991.

The Trust's assets consist of interests in real property, businesses, and cash.  Of particular relevance to this case are:

- **The Trust owns a non-controlling interest in Bensco, Inc.**  Bensco, Inc., is a Texas corporation whose wholly-owned subsidiaries include three Texas and two Louisiana automobile dealerships.  3 RR 161.  Bensco pays certain fees to Renson Enterprises, which is wholly-owned by Petitioner.  3 RR 134.  The Trust owns one share less than fifty percent of Bensco.  The Trust does not have a controlling interest in Bensco.  3 RR 133.

- **The Trust owns a 97% interest in Lone Star Capital Bank.** 3 RR 49. Lone Star Capital Bank was formed in 2003 as a result of the merger of two banks. It specializes in banking products and services for entrepreneurs, small and medium sized businesses, executives, professionals, and real estate investors.

- **The Trust holds several million dollars in cash.** The Trust holds less than $5 million in accounts at Frost Bank in San Antonio. 3 RR 78.

- **The Trust owns other real estate.** The Trust owns real estate interests in Louisiana and Texas. 3 RR 161.

- **The Trust owns a 99% interest in Uptown Blanco, Ltd.** Uptown Blanco, Ltd. was founded at Petitioner's urging for the purpose of purchasing, renovating, and renting buildings in Blanco, Texas. 3 RR 161. The venture has not been financially successful. Uptown Blanco, Ltd. has a legal identity separate from the Trust and is managed by its 1% general partner—an entity that is 100% owned by Petitioner, not the Trustee. Of the $20.7 million the Trust has invested in Uptown Blanco, the vast majority of those funds have been loaned to the Trust from Mr. Benson. 4 RR 31.

In his 35 years as Trustee, Mr. Benson has diligently managed the Trust in the best interests of its beneficiaries. The Trust grants Mr. Benson sole discretion over the distribution of Trust principal. 3 RR 212.

Mr. Benson utilizes the assistance of accountants, bookkeepers, and business advisors to manage the affairs of the Trust. Petitioner has never alleged that Mr. Benson improperly removed or utilized Trust assets, destroyed Trust records, purposely caused a decrease in the Trust's value, or otherwise committed a breach of trust. And even though he is the income beneficiary of the Trust—as well as Trustee—he has never taken an income disbursement or management fee out of the Trust; in fact, Mr. Benson is personally owed over $17 million from the Trust. 3 RR 231; 4 RR 31.

## SUMMARY OF ARGUMENT

The dispute between Mr. Benson and his daughter has received considerable attention and even attracted national news coverage. *See* Ken Belson, *A Messy Family Battle for New Orleans Teams*, N.Y. TIMES, Mar. 6, 2015, http://www.nytimes.com/2015/03/07/sports/football/tom-benson-saints-owner-and-heirs-are-locked-in-an-inheritance-dispute.html. This high-profile case should be subject to the same rules and laws as any other case, but that has not been the experience so far. To the contrary, Mr. Benson's experience in the trial court has been highly irregular.

Following the close of evidence at a two-day hearing on Petitioner's request for a temporary injunction, the court announced—for the first time—that it would be appointing a receiver to "assist" Mr. Benson in his duties as Trustee, thereby preventing him from taking-on "more than he can bear." 1 Supp. CR 16-17. And turning Texas law on its head, the trial court suggested that the appointment of a receiver would be "a lesser restrictive option" than a narrowly-tailored temporary injunction. 5 RR 14.

The court's announcement was made without notice that the trial court was considering such a drastic remedy; without argument, briefing, or the presentation of evidence on that issue; and without reference to the principles of law governing such an action. The parties have been dealing with the fallout of that sudden announcement ever since.

The trial court has issued three orders since the hearing on Petitioner's application for temporary injunction. The most recent order, styled the "Second Amended Order Granting Injunction, Suspending Trustee, and Appointing Limited Temporary Co-Receivers with Restrictions," 1 Supp. CR 4, constitutes an abuse of discretion for three reasons. First, it fails to require that Petitioner meet her burden to present evidence of a breach of trust. Second, it fails to require evidence of an irreparable harm and the inadequacy of less-intrusive remedies. Third, the Second Amended Order was issued following a series of repeated violations of Mr. Benson's right to notice and due process, and it is void for failure to comply with the mandatory requirements of Texas Rule of Civil Procedure 683.

I.      **Without evidence of a material breach of trust, neither a temporary injunction nor a receivership is appropriate.**

Temporary injunctions and receiverships are both "extraordinary remedies," and neither issues as a matter of right. *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 279-80 (Tex. App.—San Antonio 2003, no pet.) ("A temporary injunction is an extraordinary remedy and does not issue as a matter of right."); *Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("The appointment of a receiver . . . is a harsh, drastic, and extraordinary remedy, to be used cautiously."). As such, Petitioner bears the burden of proof and must provide evidence supporting each element of her claims to these extraordinary forms of relief. *Intercont'l Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 891 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Benefield*, 266 S.W.3d at 32 ("The burden of proof to show the existence of circumstances justifying the appointment of a receiver rests on the party seeking the appointment.").

A.      **Both temporary injunctions and receiverships require evidence of a breach of trust.**

1.      **To suspend a Trustee, Petitioner must demonstrate both a material breach of trust and material financial harm.**

To obtain a temporary injunction, Petitioner must establish a "probable right to recovery" on her cause of action: Removal of Trustee under Texas Property

Code, § 113.082. "A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it." *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied).

Section 113.082(a)(1) provides that a trustee may be removed if: "the trustee materially violated or attempted to violate the terms of the trust and the violation or attempted violation results in a material financial loss to the trust." TEX. PROP. CODE § 113.082.[3] Thus, to obtain a temporary injunction, Petitioner must present evidence tending to sustain the allegation that Mr. Benson materially violated or attempted to materially violate the terms of the trust <u>and</u> that his violation or attempted violation resulted in material financial loss. Granting a temporary injunction without evidence of <u>both</u> elements would be an abuse of discretion.

### 2. Receivership likewise requires a breach of trust.

The statutory authorization for appointing a receiver is Section 114.008 of the Texas Property Code, which lists available "Remedies for Breach of Trust." Under Section 114.008,[4] a court may "appoint a receiver to take possession of the

---

[3] The trial court explicitly declined to find Mr. Benson incapacitated. 4 RR 167; 1 Supp. CR 16. Further, the other potential grounds for removal—failure "to make an accounting that is required by law or by the terms of the trust" and "other cause for removal"—were neither argued by Petitioner nor addressed in the trial court's Addendum.

[4] The trial court also purports to justify its ruling under Civil Practice and Remedies Code § 64.001(a). But there was no notice of this basis for receivership. Petitioner's pleadings fail to even mention § 64.001(a), much less present argument or evidence supporting its elements.

*(footnote continued on next page)*

trust property and administer the trust" if it finds that "a breach of trust has occurred or might occur." TEX. PROP. CODE § 114.008(a)(5). To remove the Trustee under § 114.008, Petitioner must prove that Mr. Benson "materially violated or attempted to violate the terms of the trust <u>and</u> the violation or attempted violation results in a material financial loss to the trust." TEX. PROP. CODE § 113.082(a)(1) (emphasis added); *see also* TEX. PROP. CODE § 114.008(a)(7) (incorporating TEX. PROP. CODE § 113.082). She failed to do either.

## B. No evidence indicates a breach of trust.

To obtain either a temporary injunction or a receivership, Petitioner must present evidence demonstrating that Mr. Benson committed or attempted to

---

Accordingly, this provision cannot support the trial court's ruling. TEX. R. CIV. P. 682 ("No writ of injunction shall be granted unless the applicant therefore shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the <u>grounds for such relief</u>.") (emphasis added); *see also Easton v. Brasch*, 277 S.W.3d 558, 560 (Tex. App.— Houston [1st Dist.] 2009, no pet.) ("We hold the trial court abused its discretion by granting injunctive relief to Brasch, who never pleaded for injunctive relief.").

Second, the Property Code provides a specific grant of authority to appoint a receiver over trust assets. *See* TEX. PROP. CODE § 114.008(a)(5). As the Supreme Court recently emphasized, courts should not disrupt such comprehensive statutory schemes. *See Ritchie v. Rupe*, 443 S.W.3d 856, 880 (Tex. 2014) ("When the Legislature has enacted a comprehensive statutory scheme, we will refrain from imposing additional claims or procedures that may upset the Legislature's careful balance of policies and interests."). Accordingly, the trial court had no authority to appoint a receiver under the broad, catch-all provisions of § 64.001 when there is a specific statute that controls. *See Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855, 861 (Tex. App.— Houston [1st Dist.] 1999, no pet.). "Equity follows the law." *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648 (Tex. 2007). It does not rewrite it.

Finally, even if § 64.001 were applicable, Petitioner has not met her burden of demonstrating that the Trust property is "in danger of being lost, removed, or materially injured." TEX. CIV. PRAC. & REM. CODE § 64.001(b). *See infra* Part II.B.

11

commit a material breach of trust <u>and</u> that his breach resulted in material financial loss. The "terms of the trust" include a fiduciary's common law duties. TEX. PROP. CODE § 113.051.

Although the trial court found that Mr. Benson committed a breach of trust, it failed to identify either (1) <u>which</u> duty Mr. Benson allegedly breached or (2) <u>how</u> Mr. Benson breached that duty. Indeed, the evidence presented at the hearing offered no legally sufficient evidence of a past or potential material breach of trust. "Material" events are defined as "important" events that "hav[e] influence or effect." BLACK'S LAW DICTIONARY 976 (6th ed. 1990). This language reflects the general rule that "[n]ot every breach of trust warrants removal of the trustee." RESTATEMENT (THIRD) OF TRUSTS § 37 cmt. e. Only "gross or continued inadequacies" might warrant judicial intervention on matters of trustee performance. *Id*.

The trial court's Addendum and Petitioner's application cite five events—(1) transferring funds out of Lone Star Capital Bank, (2) refusing to a make payment owed by Bensco, Inc.—not the Trust—and a discretionary payment supporting Uptown Blanco, Ltd. from Trust assets, (3) moving the bookkeeper, (4) Mr. Benson's unwillingness to meet with Petitioner, and (5) his discontinuance of discretionary Trust disbursements and his decision to replace members of Lone Star Capital Bank's board of directors—as grounds for finding a breach of trust.

However, the evidence presented at the hearing provided no legally sufficient evidence of a material breach of trust, a potential breach of trust, or material financial loss to the Trust or its beneficiaries. The trial court therefore abused its discretion in imposing a temporary injunction and appointing the Co-Receivers.

### 1. Lone Star Capital Bank.

On January 7, 2015, Mr. Benson transferred approximately $20 million of his personal assets—as well as $4.7 million of Trust cash—from Lone Star Capital Bank to Frost National Bank. 3 RR 78. The trial court's Addendum notes this withdrawal, and then chastises Mr. Benson for failing to "return[] all the funds." 1 Supp. CR 16. Nowhere, however, does the trial court explain <u>why</u> Mr. Benson should return the funds or <u>which</u> fiduciary duty he may have breached. Without a breach of a recognized duty, the trial court cannot substitute its discretion for that of the Trustee. *Di Portanova v. Monroe*, 229 S.W.3d 324, 330 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("A court cannot substitute its discretion for that of a trustee, and can interfere with the exercise of discretionary powers only in cases of fraud, misconduct, or clear abuse of discretion.").

Even accepting only the evidence supporting Petitioner's position, she failed as a matter of law to prove a material breach or potential breach of trust. To begin with, it is uncontested that the transferred funds remain in the possession of the Trust. They have not been dissipated or misallocated; they have simply been

transferred to a different financial institution. The Trustee has no duty to keep Trust funds in a specific bank account, so it cannot be a breach of trust to transfer the funds to a different bank.

Further, Petitioner has not presented any affirmative evidence suggesting that there was any harm to the Trust or its assets, much less the "material financial loss" required for a breach of trust. At the hearing, Tom Roddy (Chairman of the Board of Lone Star Capital Bank) testified that there was nothing illegal about moving either Trust or personal funds to Frost National Bank, 3 RR 119, and—most importantly—that the transaction had no impact on the book value of Lone Star, 3 RR 122. He also testified that only $4.7 million of the $25 million Mr. Benson transferred to another bank actually belonged to the Trust. 3 RR 78. This means that the transferred Trust assets only accounted for approximately 2% of the Bank's total deposits, not the 12% stated in the trial court's Addendum. 1 Supp. CR 13. These facts are not evidence of any breach, much less a material breach, or material financial loss of any type to the Trust.

Without some factual basis tending to establish both a breach of trust and a material financial loss, the trial court had an insufficient basis for its ruling. The evidence in this record conclusively establishes that the conduct in question—moving assets from one financial institution to another respected and fully-capitalized financial institution (Frost National Bank)—is not a breach of trust as a

matter of law. Trustees are free to exercise business judgment, and these decisions about Trust assets are protected by the business judgment rule. *See* TEX. PROP. CODE § 114.001(b).

### 2. Bensco, Inc. and Uptown Blanco, Ltd.

The record also conclusively establishes that Mr. Benson did not breach any fiduciary duties by failing to pay certain expenses for Bensco, Inc. and Uptown Blanco, Ltd. At the hearing, Petitioner acknowledged that the Trust does not own Bensco's airplane and that Bensco—not the Trust—is responsible for paying Renson Enterprises' management fee.[5]  3 RR 272-73. Mary Polenski, the bookkeeper for the Trust, also testified that Uptown Blanco is responsible for paying its own property insurance, and then seeks reimbursement from the Trust. 4 RR 26. These facts establish as a matter of law that Mr. Benson—as Trustee— had no duty to pay <u>any</u> of these bills. Without a duty, there can be no breach of trust.

Nor is there any evidence suggesting that failure to pay <u>these</u> bills was material to the Trust, or that non-payment caused material financial loss. The whole point of including a materiality requirement in the statute is to eliminate hyper-technical grievances about immaterial events as grounds for removing a

---

[5] Renson Enterprises is owned by Petitioner and provides management services to Bensco, Inc. 3 RR 65. It does not provide any services to the Trust—which owns only a minority position in Bensco, Inc.—and is not owned or operated by the Trust.

Trustee. Mr. Benson's one-time failure to make <u>discretionary</u> payments on behalf of Uptown Blanco is not a "gross or continued inadequac[y]" in Mr. Benson's performance as Trustee, and is insufficient as a matter of law to support a finding that Mr. Benson has committed a material breach of trust, or that these acts caused material financial loss to the Trust.

### 3. Moving the bookkeeper.

In December 2014, Mr. Benson requested that his personal bookkeeper—Mary Polenski—leave her office at Renson Enterprises and relocate to another location. Petitioner alleges that this action constitutes a breach of trust, but provides no evidence demonstrating either a duty to locate the bookkeeper at Renson or material harm resulting to the Trust from that action.

Nothing in the record indicates that Mr. Benson breached his duties to keep accurate records, provide an accounting, or provide material information. Mary Polenski testified that (1) the Trust records are being maintained as always, (2) no records have been destroyed, and (3) no one has requested Trust information since the relocation of her previous office at Renson Enterprises. 4 RR 28-30. Absent evidence of destruction of records or the intent to do so, ordering a temporary injunction to protect those records is inappropriate. *See Hughes v. Marshall Nat. Bank*, 538 S.W.2d 820, 824 (Tex. Civ. App.—Tyler 1976, writ dismissed w.o.j.) ("[W]e fail to perceive how this evidence could constitute any evidence showing

the books and records were in danger of being lost, removed or materially damaged."). Moreover, Ms. Polenski's testimony conclusively disproved any allegation that she is "unreachable." 4 RR 53 (playing voicemail received from Tom Roddy after Mary relocated offices).

The trial court concluded that Mr. Benson's decision to relocate the Trust's bookkeeper "breached the relationship of trust that existed over the life of this only parent trustee and only child beneficiary." 1 Supp. CR 14. But Texas law does not recognize a fiduciary duty of "trust" between a father and a child—certainly not one that depends on the physical location of the father's bookkeeper—and such a relationship cannot serve as grounds for removing Mr. Benson as Trustee.

As with her other claims, Petitioner failed to present legally sufficient evidence of a material breach of trust or material harm to the Trust from Mr. Benson's actions. Petitioner's evidence did not identify any breach of duty regarding the Trust records, and there is no evidence that asking Mary Polenski to change her location has in any way interfered with the administration of the Trust or caused material financial loss to its assets or beneficiaries. 4 RR 28-30. This claim would not support judicial intervention without "repeat or flagrant" misconduct by the Trustee. RESTATEMENT (THIRD) OF TRUSTS § 37 cmt. e. There was no such evidence.

### 4.     Lack of communication.

As Trustee, Mr. Benson has a duty to communicate certain information to the Trust's beneficiaries. Under § 113.151, "[a] beneficiary by written demand may request the trustee to deliver to each beneficiary of the trust a written statement of accounts covering all transactions since the last accounting or since the creation of the trust, whichever is later." TEX. PROP. CODE § 113.151. This obligation is not unlimited, however, and "the trustee is not obligated or required to account to the beneficiaries of a trust more frequently than once every 12 months." *Id.* Similarly, while the Trustee must communicate all material facts affecting the beneficiary's rights, "the trustee is not under a duty to the beneficiary to furnish information to him in the absence of a request for such information." RESTATEMENT (SECOND) OF TRUSTS § 173 cmt. d.

Petitioner did not present—and the trial court did not cite—any evidence of a "written demand" for an accounting, a request for material information, or a refusal by Mr. Benson to provide any information required by his duties. Instead, the trial court cites Mr. Benson's statement that "I want no contact with any of you" and chides him for failing "to explain his statements." 1 Supp. CR 14, 16. Rather than establish a duty and demonstrate a breach, the trial court asserts that Mr. Benson's statement "is most contrary to the evident intention of the settlers [sic] of the trust at the time it was established." 1 Supp. CR 14. However,

Petitioner has presented no evidence of the "settlor's intent," and has cited no provision of the Trust agreement imposing a duty to maintain social interaction with the beneficiaries. Absent a duty, there can be no breach, and Mr. Benson's desire to avoid social interaction with the beneficiaries is not grounds for removal.

**5.    Discontinuance of monthly disbursement and replacement of board of directors.**

Finally, Mr. Benson's decisions to (1) discontinue Petitioner's $10,000 monthly disbursement from the Trust and (2) remove Petitioner, Tom Roddy, and others from Lone Star's board of directors were unquestionably within his discretion as Trustee. 3 RR 212. Petitioner has no right to receive a monthly disbursement, as "[u]nder a discretionary trust, the beneficiary is entitled only to the income or principal that the trustee, in his discretion, shall distribute to the beneficiary." *Di Portanova v. Monroe*, 229 S.W.3d 324, 330 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). And as Mr. Roddy admits, neither he, Petitioner, nor anyone else has a right to serve on Lone Star's board of directors or to manage any aspect of Trust assets. 3 RR 132, 133. These rights are reserved to the Trustee. *See Alpert v. Riley*, 274 S.W.3d 277, 291 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("Once a settlor completes a transfer of assets to a trust, the beneficiaries gain beneficial title and the trustee gains sole legal title in, and <u>exclusive control over</u>, the trust property, subject to the trust instrument.") (emphasis added).

Because principal distributions and trust administration are the exclusive province of the Trustee, "[a] court cannot substitute its discretion for that of a trustee, and can interfere with the exercise of discretionary powers only in cases of fraud, misconduct, or clear abuse of discretion." *Di Portanova*, 229 S.W.3d at 330. Petitioner presented no evidence demonstrating either a material breach of duty or a material financial loss to the Trust as a result of these actions. The only rationale cited by the trial court was (1) potential Lone Star Bank customer concern and (2) potential damage from failing to assure "major interested parties"—such as employees like Mr. Roddy—of the Trust's continued "stability and calmness."[6] However, there was no testimony demonstrating customer concern at the hearing; the trial court appears to have inferred this rationale from Mr. Roddy's testimony. 3 RR 291. However, had Mr. Roddy testified that customers might be concerned about the withdrawal, that would not constitute evidence to support this motion, as opinion testimony speculating on how employees and customers will react is not evidence. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 232 (Tex. 2004) ("[O]pinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact more probable or less probable.").

---

[6] The trial court notes with alarm that Mr. Roddy "resigned duties while on the stand." 1 Supp. CR 16. However, Mr. Roddy resigned as Trustee of <u>Renson's</u> 401(k) account—<u>not</u> Lone Star Bank—which has never managed <u>any</u> of the Trust's assets. 3 RR 116.

Because Petitioner failed to present any evidence demonstrating (1) a material breach of trust and (2) a material financial loss to the Trust, the trial court abused its discretion in appointing receivers, granting her application for a temporary injunction, and suspending Mr. Benson from his duties as Trustee.

**C.   Because there is no evidence of a breach of trust, this Court should reverse and render a decision denying Petitioner's application.**

Absent any evidence demonstrating a breach of trust, it is an abuse of discretion to grant either a temporary injunction or receivership. *In re Toyota Motor Sales, U.S.A.*, 407 S.W.3d 746, 759-61 (Tex. 2013); *Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex. 1989). Given the complete lack of evidence to support Petitioner's burden, Mr. Benson respectfully requests that this Court reverse the trial court's order and render judgment on Petitioner's pleadings for a temporary injunction and a receivership.

**II.   Neither a temporary injunction nor a receivership can be defended under the requirements of equity.**

As "extraordinary" equitable remedies, temporary injunctions and receiverships are only appropriate when (1) the premises for the remedy exist and (2) the requirements for equitable relief are satisfied. Petitioner has not established a breach of trust, and has presented no evidence demonstrating that less intrusive remedies are inadequate. Without evidence demonstrating the inadequacy of lesser remedies, it is an abuse of discretion to grant either a temporary injunction or

appoint a receiver. *See, e.g.*, *Benefield*, 266 S.W.3d at 32 ("because remedies at law were not even considered, they could not have been deemed 'inadequate' as required by" Texas law).

## A. Both temporary injunctions and receiverships demand serious judicial restraint.

Courts must be judicious in exercising their power to impose temporary injunctions, and even more so when appointing receivers. These are remedies of last resort, and may only be imposed if the movant demonstrates (1) irreparable harm and (2) that less restrictive remedies are inadequate to protect its interests.

### 1. Petitioner must demonstrate irreparable harm to receive either a temporary injunction or a receivership.

To obtain a temporary injunction, Petitioner must establish "a probable, imminent, and irreparable injury in the interim if the injunction is not granted." *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 280 (Tex. App.—San Antonio 2003, no pet.). An irreparable injury is one for which there is no adequate remedy at law—*i.e.*, that "cannot be adequately compensated in damages or . . . the damages cannot be measured by any certain pecuniary standard." *Twyman v. Twyman*, 01-08-00904-CV, 2009 WL 2050979, at *4 (Tex. App.—Houston [1st Dist.] July 16, 2009, no pet.); *Tom James Co. v. Mendrop,* 819 S.W.2d 251, 253 (Tex. App.—Fort Worth 1991, no writ) ("An injunction will not issue if damages are sufficient to compensate the plaintiff for any wrong committed by the defendant and if the damages are subject to measurement by an ascertainable

pecuniary standard."). Irreparable injury is also a pre-requisite for appointing a receiver.[7]

To be valid, "[a]n injunction should be broad enough to prevent a repetition of the 'evil' sought to be corrected, but not so broad as to enjoin a defendant from lawful activities." *Lagos v. Plano Econ. Dev. Bd., Inc.*, 378 S.W.3d 647, 650 (Tex. App.—Dallas 2012, no pet.). Petitioner must present evidence demonstrating the need for "both the kind of relief granted and the specific restrictions" imposed. *Id.* Thus, an injunction "must not be framed so broadly as to prohibit the enjoyment of lawful rights." *Sw. Research Inst. v. Keraplast Technologies, Ltd.*, 103 S.W.3d 478, 482 (Tex. App.—San Antonio 2003, no pet.). Rather, it "must be specific in its terms and describe in reasonable detail the act or acts to be restrained." *Id.* (citing TEX. R. CIV. P. 683). Failure to properly limit the scope of a temporary injunction is an abuse of discretion requiring modification or vacatur. *Id.* at 483.

Thus, a temporary injunction is only valid if (1) there is no adequate remedy at law and (2) a less-invasive injunction would be inadequate.

---

[7] "A trial court should not appoint a receiver if another remedy exists at law or in equity that is adequate and complete." *Elliott v. Weatherman*, 396 S.W.3d 224, 228 (Tex. App.—Austin 2013, no pet.) (emphasis added)

**2.** **Receivership also requires evidence that no less invasive equitable remedy—such as a temporary injunction—is adequate.**

The true remedy of last resort—which courts consider "extraordinarily harsh" and are "particularly loathe to utilize"—is receivership. *Indep. Am. Sav. Ass'n v. Preston 117 Joint Venture*, 753 S.W.2d 749, 750 (Tex. App.—Dallas 1988, no writ). This reluctance "stems from the understanding that the power to appoint a receiver is in derogation of a fundamental property right of a legal owner to possession and enjoyment of his or her property." 65 Am. Jur. 2d Receivers § 10.

Receivership not only requires a showing of irreparable harm, but also proof that less-invasive <u>equitable</u> remedies would be inadequate. *Chapa v. Chapa*, 04-12-00519-CV, 2012 WL 6728242, at *6 (Tex. App.—San Antonio Dec. 28, 2012, no pet.) ("As an extraordinary remedy, appointment of a receiver must be based on evidence showing an immediate risk of harm, and that there is no other lesser remedy at law or in equity."); *Elliott*, 396 S.W.3d at 228 ("A trial court should not appoint a receiver if another remedy exists at law or in equity that is adequate and complete."); *Benefield*, 266 S.W.3d at 32-33.

Because a temporary injunction is another remedy "in equity," a receivership is only appropriate if (1) no adequate legal remedy exists and (2) a temporary

injunction is inadequate to protect movant's rights.[8]  And since neither a temporary injunction nor receivership is appropriate if a less-invasive remedy exists, Petitioner must present evidence demonstrating the inadequacy of (1) legal remedies and (2) lesser injunctive relief.  She has done neither.

## B.  Petitioner's failure to show any irreparable harm is fatal to both her temporary injunction and receivership claims.

### 1.  Petitioner has presented no evidence of "harm."

As an initial matter, Petitioner has not presented any evidence of "harm" to the Trust.  *See supra* Part I.B.  No assets have been removed from the Trust, the Trust documents are being maintained as always, and the book value of Lone Star Capital Bank has not decreased.  3 RR 122.

Further, "[a] party's fear and apprehension that another party might take or do certain actions are not sufficient to establish injury."  *Williams v. Dep't of Criminal Justice-Institutional Div.*, 04-03-00774-CV, 2004 WL 28660, at *1 (Tex. App.—San Antonio Jan. 7, 2004, pet. denied) (citing *Markel v. World Flight, Inc.*, 938 S.W.2d 74, 79–80 (Tex. App.—San Antonio 1996, no writ)).  Such testimony "is not sufficient to establish any injury, let alone 'irreparable' injury."  *Markel*, 938 S.W.2d at 80.  The trial court's unfounded assertion that Mr. Benson's

---

[8] The trial court disagrees, casting receivership as a kindly, intermediate measure to "assist" Mr. Benson in his duties by preventing him from taking-on "more than he can bear."  1 Supp. CR 16-17.  It also misunderstands the drastic nature of receivership, referring to it as "a lesser restrictive option" than a narrowly tailored injunction.  5 RR 14.

decision to transfer funds from Lone Star to Frost National Bank "impaired the bank's functions and <u>could cause</u> other depositors concern"[9] is patently insufficient and entirely speculative, as is its statement that "[t]he court was left to wonder whether this was a rational fear and where the funds would go next." 1 Supp. CR 13-14. Petitioner has the burden to provide "<u>evidence</u> of a <u>concrete</u> and <u>imminently</u> threatened injury." *Int'l Ass'n of Firefighters*, 554 S.W.2d at 817 (emphasis added). Petitioner presented no evidence suggesting either depositor concern or the probability of additional movement of Trust assets. Depositors' hypothetical concerns and the trial court's "wonder" and "concern" over "where the funds would go next" are "not sufficient to establish <u>any</u> injury, let alone 'irreparable' injury." *Markel*, 938 S.W.2d at 80 (emphasis added).

## 2. Petitioner presented no evidence that her alleged injuries were "irreparable."

The trial court abused its discretion by failing to require that Petitioner demonstrate that her harm was "irreparable." This failure is readily apparent from the trial court's own statement of the applicable law, to wit:

> It is sufficient to consider only the trustee's actions and statements and whether they damaged the trust.

1 Supp. CR 16.

---

[9] Whether Lone Star's functionality was "impaired" is only relevant if it decreases the value of the bank. And even if evidence established that the bank's value has decreased—which it does not—that evidence would be irrelevant at this point because the bank is not for sale.

That is incorrect. As discussed, the inadequacy of other legal relief is a requirement for either a temporary injunction or a receivership. Because "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts," *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992), it was an abuse of discretion to grant Petitioner's relief without considering whether her harm was irreparable. *See Benefield*, 266 S.W.3d at 32 ("because remedies at law were not even considered, they could not have been deemed 'inadequate' as required by" Texas law).

The trial court's Addendum does not consider the existence of legal remedies, and Petitioner presented no evidence suggesting their inadequacy. However, the existence of legally adequate remedies is clear from the text of the Texas Property Code itself. Texas Property Code, § 114.001(c) provides that "[a] trustee who commits a breach of trust is chargeable with any damages resulting from such breach of trust, including but not limited to: (1) any loss or depreciation in value of the trust estate as a result of the breach of trust; (2) any profit made by the trustee through the breach of trust; or (3) any profit that would have accrued to the trust estate if there had been no breach of trust." TEX. PROP. CODE § 114.001(c). Furthermore, § 114.008(a) of the Texas Property Code—the very section Petitioner relies upon for her Trustee removal claim—specifically provides that any breach of trust may be remedied by "compel[ling] the trustee to redress a

breach of trust, <u>including compelling the trustee to pay money or to restore property</u>." TEX. PROP. CODE § 114.008(a)(3) (emphasis added). Because an irreparable harm is one that "cannot be adequately compensated in damages," and any perceived losses from Mr. Benson's alleged breach of trust <u>are</u> recoverable as damages, the alleged harm is not irreparable and therefore cannot form the basis for a temporary injunction.

Absent some alternative reason that damages are unavailable, such as the Trustee's insolvency, the availability of damages is fatal to Petitioner's requests for both a temporary injunction and receivership. However, she has presented no evidence that Mr. Benson would be incapable of responding in damages for any breach of trust he might commit. *See Ballenger v. Ballenger*, 694 S.W.2d 72, 77-78 (Tex. App.—Corpus Christi 1985, no writ) ("The record shows that appellants are solvent and capable of responding in damages for any wrongful acts which appellants may be held to have committed against appellee. Therefore, even if all of the facts alleged by appellee in his petition for injunctive relief are ultimately found to be true by the trier of facts, the granting of the temporary injunction constituted an abuse of the discretionary power of the trial court.").

Faced with the clear text of the Texas Property Code authorizing damages for a breach of trust, it was an abuse of discretion to grant Petitioner's temporary

injunction without any evidence demonstrating that Petitioner's asserted harm was irreparable.

## C. Even if Petitioner demonstrated irreparable harm, the temporary injunction and receivership are overbroad and unnecessarily intrusive.

If this Court finds that Petitioner has no adequate remedy at law, she still failed to demonstrate that a less intrusive injunction would be inadequate to protect Petitioner's interests. *See Elliott*, 396 S.W.3d at 228 ("[A] trial court should not appoint a receiver if another remedy exists at law <u>or in equity</u> that is adequate and complete.") (emphasis added). As with monetary damages, no evidence was presented on lesser remedies at the hearing, and the trial court did not address that issue in its Addendum.

Petitioner's alleged harms are not wide-ranging; they are narrow complaints about Mr. Benson's conduct that could be easily remedied by a narrow temporary injunction. Rather than follow the mandate that "[a]n injunction should be broad enough to prevent a repetition of the 'evil' sought to be corrected, but not so broad as to enjoin a defendant from lawful activities," *Lagos*, 378 S.W.3d at 650, the trial court ordered the <u>complete suspension</u> of Mr. Benson as Trustee, and then took the even more drastic action of appointing two Co-Receivers to manage the Trust in his place. Petitioner has presented no evidence to justify either the relief granted or the scope of these restrictions. *See id.*

Had the trial court engaged in the proper analysis, it would have found less-invasive, adequate alternatives. Consider Lone Star Capital Bank. If the trial court was concerned that Mr. Benson's actions might constitute a breach of trust, a simple injunction requiring that Mr. Benson (1) return the withdrawn Trust funds and (2) refrain from replacing the board of directors pending litigation would certainly be sufficient to prevent those harms to the Bank or its brand. It would put hypothetically concerned depositors at ease, assure potentially worried employees, and protect Petitioner's purported right to serve on the board of directors. The same analysis applies to Mr. Benson's discretionary distributions to Petitioner, discretionary payment of bills for Uptown Blanco, and the decision to move Mary Polenski to a different office. A simple, limited injunction requiring that he continue to make (1) traditional distributions and payments and (2) return the Trust's bookkeeper to her Renson office—as Petitioner requested in her motion—would certainly be sufficient to accomplish these goals.

But the trial court did not even consider these remedies. Instead, it jumped immediately to the most intrusive, most expensive options available. Its failure to require evidence demonstrating that less invasive legal or injunctive relief would adequately address Petitioner's asserted harms was an abuse of discretion.

## III. The trial court's Orders are facially flawed and void.

From the *ex parte* TRO that kicked off this litigation through the trial court's most recent Order, this case has proceeded in an *ad hoc* manner that bears no resemblance to the procedures required under Texas law. *See* TEX. R. CIV. P. 21(b). The repeated and flagrant denials of Mr. Benson's due process right to notice and an opportunity to be heard have resulted in a <u>facially invalid</u> Order suspending him as Trustee and exposing the Trust and its beneficiaries to significant and irrevocable harm.

On January 20, 2015—despite minimal evidence of damage and <u>no</u> indication that such damage would occur before notice and a hearing[10]—the trial court granted Petitioner's expansive application for an *ex parte* TRO, enjoining Mr. Benson from taking any actions related to the Trust he had administered competently and loyally for almost 35 years. CR 23-27. The TRO contained a notice of hearing, which provided:

> It is further ORDERED that a hearing on Petitioner's request for temporary injunction be and hereby is set for the 4th day of February, 2015, at 9:30 o'clock a.m., in Probate Court No. 2, Bexar County, Texas.

CR 27.

---

[10] TEX. R. CIV. P. 680 ("No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown . . . that immediate and irreparable injury, loss or damage will  result to the applicant <u>before</u> notice can be served and a hearing had thereon.") (emphasis added).

1884.1/557750                                                31

This was the only notice of hearing contained in the TRO, and the first and only notice of a hearing received by Mr. Benson in this case.

On February 4th and 5th, Mr. Benson's attorneys appeared in Bexar County Probate Court No. 2, as required by the TRO, and presented evidence and argument opposing the imposition of a temporary injunction. Following the close of evidence, however, the trial court did not grant or deny a temporary injunction. Under the mistaken belief that it constituted a "lesser restrictive option," 5 RR 14, the trial court announced that it would be appointing two Co-Receivers to "assist" Mr. Benson in his management of the Trust, thereby preventing him from taking on "more than he can bear." 1 Supp. CR. 16-17.

This announcement, made without any notice that the trial court was considering such a drastic remedy, was only the beginning. Over Mr. Benson's constant objections, the trial court has continued to revise and amend its order, which is now on its third iteration. The most recent order—styled the "Second Amended Order Granting Injunction, Suspending Trustee, and Appointing Limited Temporary Co-Receivers with Restrictions"—was made after the trial court received a letter from Mr. Benson's counsel specifically requesting that no further amendments without notice and an opportunity to be heard. 2 Supp. CR _.

## A. Lack of notice.

Before forfeiting control of the Trust he has administered for nearly 35 years, Mr. Benson was entitled to notice and a hearing on the appointment of a receiver. Such notice is required by the traditional rules of equity, the constitutional right to due process, and Texas Rule of Civil Procedure 21(b). *Hughes*, 538 S.W.2d at 824 ("[T]he procedure to be followed in the appointment of a receiver is governed by the rules of equity."). "Procedural due process 'requires notice that is reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests.'" *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). Thus, procedural due process requires not only notice of a hearing on receivership, but also notice of the grounds for the application. *See Gonzales v. Tex. Employment Com'n*, 653 S.W.2d 308, 310 (Tex. App.—San Antonio 1983, writ refused n.r.e.) ("These basic rights mandate that parties receive 'adequate notice detailing the reasons' giving rise to the hearing so they might have the opportunity to prepare their side of the controversy.") (emphasis added). Appointing a receiver over real property—such as some of the assets contained within the Trust—without notice constitutes an abuse of discretion. *Elliott*, 396 S.W.3d at 229 ("[A]ppointment of a receiver over real property without notice is expressly forbidden.").

### 1. Mr. Benson never received notice or a hearing on Petitioner's application to appoint receivers or its subsequent amendments to that Order.

Mr. Benson was not given notice that the trial court was considering appointing the Co-Receivers until after the close of evidence at Petitioner's temporary injunction hearing. The Austin Court of Appeals considered this precise situation in *Elliott v. Weatherman.* 396 S.W.3d 224, 228 (Tex. App.—Austin 2013, no pet.). After the close of evidence at petitioner's hearing to temporarily enjoin the trustee's actions, the trial court appointed a receiver to administer certain trust assets. The Austin court reversed that decision as an abuse of discretion. Finding that the trustee had only been served notice of a temporary injunction hearing—not a receivership hearing—the court held that the temporary injunction hearing did not serve as an adequate substitute for the receivership hearing, as "the record does not show that his request for receivership was ever separately set for hearing." *Id.* at 329. So even though both parties received notice and held a hearing on petitioner's application for temporary injunction, it was an abuse of discretion to appoint a receiver without notice and a hearing <u>on</u> <u>that</u> <u>issue</u>.

As in *Elliott*, the trial court's decision to appoint a receiver at the close of the temporary injunction hearing denied Mr. Benson notice of the fact that the court was considering Petitioner's application to appoint a receiver. The only notice served was for the February 4 hearing on Petitioner's <u>application for temporary injunction</u>. That notice made no mention of a hearing on any application to appoint a receiver,

which is a distinct application requiring distinct notice.[11]  Similarly, the temporary injunction hearing itself was not a hearing on the application for a receiver.  The issue of appointing a receiver only arose after the conclusion of evidence on whether to grant a <u>temporary injunction</u>; no evidence or argument has been presented on whether to appoint a receiver.  Because Mr. Benson never received notice that the trial court was considering appointing a receiver, it was an abuse of discretion to appoint a receiver under these circumstances.

**2.    Mr. Benson never received notice of the grounds for Petitioner's application to appoint receivers.**

Further, Mr. Benson has been denied notice of the grounds upon which appointment of a receiver was being considered.  Petitioner's application for a temporary injunction contained no facts or legal argument urging the trial court to appoint a receiver, and provided Mr. Benson with no notice of what actions he had taken that are alleged to justify such a harsh remedy, much less why lesser legal <u>or equitable</u> remedies would be ineffective.  Without such information, Mr. Benson lacked—and continues to lack—"adequate notice detailing the reasons giving rise to the hearing," depriving him of his constitutional right to appear in court and present his side of the argument.  Even today, Mr. Benson has not received: (1) any formal notice of such an application from Petitioner; (2) any briefing from Petitioner on

---

[11] *See Elliott*, 396 S.W.3d at 229  ("Weatherman did not make his oral request until after the close of evidence at the [temporary injunction] hearing, and the record does not show that his request for receivership was ever separately set for hearing.").

why a receivership is required; (3) any evidence demonstrating the need for a receivership; or (4) any explanation why lesser remedies, such as a limited injunction or damages, would be insufficient to remedy the minor harms alleged in Petitioner's Application.

### 3. The trial court's continued *ad hoc* alteration of its Order denies Mr. Benson notice of its basis and the ability to effectively be heard on his objections.

Having suspended Mr. Benson and appointed Co-Receivers over the Trust without notice, the trial court continually seeks to deny him notice of the basis for its actions or an opportunity to effectively object to its rulings. Following the temporary injunction hearing, Mr. Benson objected to the proposed receivership order, arguing that it was unwarranted, much broader than had been anticipated, and unnecessary to address the asserted harms. 5 RR 17. The trial court overruled his objections and issued the Original Order, along with an "Addendum" purporting to explain the court's actions. CR 84. However, it failed to provide any notice as to <u>why</u> a receivership was necessary or why a narrow temporary injunction was inadequate. It simply appointed the Co-Receivers.

Nine days later—without notice, a hearing, or an explanation—the trial court issued a new order imposing a temporary injunction. Rather than simply granting the temporary injunction, this Amended Order—without even waiting for the Co-Receivers to post their bond—significantly expanded the Co-Receivers' powers,

granting them discretion "to determine the extent of co-ownership with assets held by others or other entities not before the court." CR 100.

Given the significant expense of the Co-Receivers, Mr. Benson filed a motion to expedite consideration of this appeal on February 23, 2015. Noting the Amended Order's failure to meet the requirements of Rules 683 and 684, Mr. Benson's motion called those deficiencies to this Court's attention. That motion was denied on February 25, 2015, but this Court noted that no extensions would be granted on the filing of the record or briefing deadlines.

Recognizing the problems with the Amended Order, Petitioner responded by submitting yet another amended order to the trial court in an effort to cure its errors. Mr. Benson sent the court a letter on March 2, 2015, emphasizing that he should have "an opportunity to be heard before any further action is taken in this matter." 2 Supp. CR __. But there was no such opportunity. Later that afternoon, the trial court responded by once again amending its Order, restyled as the "Second Amended Order Granting Injunction, Suspending Trustee, and Appointing Limited Temporary Co-Receivers with Restrictions." 1 Supp. CR 4. Once again, Mr. Benson had no opportunity to be heard.

The trial court's continued refusal to provide Mr. Benson with either (1) notice of the basis for its "extraordinary" and expensive violations of his rights as Trustee or (2) an opportunity to effectively contest that basis—either at the trial

court or on appeal—violates his due process rights and his rights under Texas Rule of Civil Procedure 21(b). He asks this Court to reverse the trial court's Orders.

## B. The Second Amended Order is facially void.

Even as amended, the trial court's current Order is facially void for failure to meet the requirements of Texas Rule of Civil Procedure 683, which governs the form of a temporary injunction. The rule is "mandatory and must be strictly followed." *InterFirst Bank San Felipe, N.A. v. Paz Const. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). "Where a temporary injunction is issued and does not conform to Rule 683, the nonconformity constitutes an abuse of discretion and mandates reversal." *Univ. Interscholastic League v. Torres*, 616 S.W.2d 355, 358 (Tex. Civ. App.—San Antonio 1981, no writ).

A temporary injunction is void if it fails to "set forth the reasons for its issuance." TEX. R. CIV. P. 683. "The Texas Supreme Court has interpreted this rule to require 'the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue.'" *Tuma v. Kerr County*, 336 S.W.3d 277, 279 (Tex. App.—San Antonio 2010, no pet.). "Because probable injury subsumes the elements of irreparable injury and no adequate remedy at law, a valid injunction must articulate the reasons why the identified probable injury is an irreparable one for which

applicant[] ha[s] no adequate legal remedy." *Int'l Broth. of Elec. Workers Local Union 479 v. Becon Const. Co., Inc.*, 104 S.W.3d 239, 244 (Tex. App.—Beaumont 2003, no pet.). Thus, "the mere recital of 'no adequate remedy at law' and 'irreparable harm' in the order lacks the specificity required by Rule 683." *Tuma*, 336 S.W.3d at 280; *Torres*, 616 S.W.2d at 358.

The trial court's most recent Order fails this test. Concerned that neither the First Amended Order nor the Addendum addressed Rule 683's requirements, the trial court amended its First Amended Order to proclaim that:

> Petitioner will have no adequate remedy at law, and Petitioner will be irreparably harmed. The courts [sic] reasons are found in the attached addendum.

1 Supp. CR 5.

This statement is conclusory, as it merely asserts "no adequate remedy at law" and that "Petitioner will be irreparably harmed." *Tuma*, 336 S.W.3d at 280; *Torres*, 616 S.W.2d at 358. It therefore fails to "articulate the reasons why" Petitioner's asserted injuries are irreparable, and does nothing to alleviate the First Amended Order's deficiency. Nor is that deficiency cured by the statement's citation to the Addendum, which is unchanged from the First Amended Order and contains only the conclusory statement that "[t]he court considered whether, within the four corners, and the resulting testimony, the court's ultimate decision, was compelled and no other." 1 Supp. CR 13.

The closest the Addendum comes to articulating a reason why the Trust is facing irreparable harm is its statement that "[t]he actions of the trustee will likely damage the trustee's local brand significantly over this next year if not reversed soon and if the major interested parties are not reassured that the previous status quo obtain [sic] accompanied by stability and calmness." 1 Supp. CR 16. This statement does not specify either (1) which actions by Mr. Benson create a harm or (2) which Trust brand is at risk of harm. But more importantly, this statement is also conclusory (and wholly unsupported by the evidence). There is no discussion of why Petitioner's undefined harm would be irreparable, *i.e.*, why Petitioner has no adequate remedy at law, and the record demonstrates that legal remedies were never considered. Absent an articulation of the reasons why the alleged harm is irreparable, the temporary injunction suspending Mr. Benson—and the accompanying order appointing Co-Receivers in his absence—is void for failure to satisfy the mandatory requirements of Rule 683.

## PRAYER

Appellant Thomas Milton Benson, Jr. respectfully requests that this Court reverse the trial court's order and (a) render judgment denying Petitioner a temporary injunction and a receivership, or (b) alternatively vacate the order and remand for further proceedings in accordance with this Court's opinion. Appellant further requests all relief to which he is entitled in law or in equity.

Respectfully submitted,

BECK REDDEN LLP

By: /s/ *David J. Beck*
David J. Beck
State Bar No. 00000070
dbeck@beckredden.com
Russell S. Post
State Bar No. 00797258
rpost@beckredden.com
Troy Ford
State Bar No. 24032181
tford@beckredden.com
Owen J. McGovern
State Bar No. 24092804
omcgovern@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720 (Fax)

*Attorneys for Appellant,*
*Thomas Milton Benson, Jr., as Trustee*
*of the Shirley L. Benson Testamentary*
*Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2014, a true and correct copy of the above and foregoing Brief of Appellant was forwarded to all counsel of record by the Electronic Filing Service Provider as follows:

Bennett L. Stahl
CURL STAHL GEIS
700 North St. Mary's Street, Suite 1800
San Antonio, TX 78205
blstahl@csg-law.com

Emily Harrison Liljenwall
SCHOENBAUM, CURPHY & SCANLAN, P.C.
112 E. Pecan, Suite 3000
San Antonio, TX 78205
eliljenwall@scs-law.com

Harriet O'Neill
LAW OFFICE OF HARRIET O'NEILL, P.C.
919 Congress Avenue, Suite 1400
Austin, TX 78701
honeill@harrietoneilllaw.com

Douglas Alexander
ALEXANDER, DUBOSE, JEFFERSON & TOWNSEND LLP
515 Congress Ave., Suite 2350
Austin, TX 78701
dalexander@adjtlaw.com

**Attorneys for Appellee Renee Benson**


*/s/ David J. Beck*
David J. Beck

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Tex. R. App. P. 9.4 because it contains 9,814 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(2)(B).

2.      This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman font.

Dated: <u>March 6, 2015</u>.


<u>*/s/ David J. Beck*</u>
David J. Beck
**Attorney for Appellant**
**Thomas Milton Benson, Jr., as Trustee**
**of the Shirley L. Benson Testamentary**
**Trust**

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO

ESTATE OF SHIRLEY L. BENSON;

THOMAS MILTON BENSON
AS TRUSTEE OF THE
SHIRLEY L. BENSON TESTAMENTARY TRUST,
*Appellant*,

**v.**

RENEE BENSON,
*Appellee.*

Appeal from Probate Court No. 2, Bexar County, Texas,
Trial Court Cause 155,172 & 155,172-A

**APPENDIX TO BRIEF OF APPELLANT**

## Tab

A   Order Suspending Trustee & Appointing Temporary Co-Receivers with Restrictions (CR 67 – 83)

B   Addendum to Order (CR 84 – 88)

C   Amended Order Granting Injunction, Suspending Trustee & Appointing Limited Temporary Co-Receivers with Restrictions (CR 98 – 109)

D   Second Amended Order Granting Injunction, Suspending Trustee & Appointing Limited Temporary Co-Receivers with Restrictions (Supp CR 4 – 17)

E   Notice of Accelerated Interlocutory Appeal (CR 110 – 112)

F   (Amended) Notice of Accelerated Interlocutory Appeal (2 Supp CR _)

G   Second Amended Notice of Accelerated Interlocutory Appeal (2 Supp CR _)

H   Last Will and Testament of Shirley L. Benson (PX1)

# TAB A

Order Suspending Trustee & Appointing Temporary Co-Receivers
with Restrictions (CR 67 – 83)

CAUSE NO. 155,572

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| SHIRLEY L. BENSON, | § | NUMBER TWO |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

CAUSE NO. 155,572-A

| | | |
|---|---|---|
| RENEE BENSON | § | INTHEPROBATECOURT |
| | § | |
| v. | § | |
| | § | NUMBER TWO |
| THOMAS MILTON BENSON, JR., AS | § | |
| TRUSTEE OF THE SHIRLEY L. | § | |
| BENSON TESTAMENTARY TRUST | § | BEXAR COUNTY, TEXAS |

5821917.3

V02150P1309

# ORDER SUSPENDING TRUSTEE &
## APPOINTING TEMPORARY CO-RECEIVERS WITH RESTRICTIONS

The Court has considered the request of Renee Benson, Petitioner, for the appointment of a temporary receiver and for her to serve as substitute trustee as set out in her Original Petition for Removal of Trustee and Application for Temporary Injunctive Relief. The court responds with a limited temporary appointment of co-receivers for the Shirley L. Benson Testamentary Trust (the "Trust). Such appointment is immediately necessary for purposes of managing and conserving the Trust's property during litigation, the collateral litigation in Louisiana or until the parties resolve their dispute and a family trustee qualifies, and the need for court action no longer exists.

The appointment of temporary co-receivers for the Trust's property is warranted on equitable grounds and under Texas Property Code§ 114.008(a)(5) and Texas Civil Practice and Remedies Code§ 64.001(a). The court realizes and acknowledges that the trustee has served competently for decades and deserves to know why the court acted. The court's reasons are found in the addendum attached hereto.

The powers and duties of the Temporary Co-Receivers are set forth in this Order. To the extent that Petitioner seeks to require the Temporary Co-receivers to fulfill all duties and responsibilities that trustees owe to beneficiaries arising under statutory law, common law, or trust instruments, including any fiduciary duties, such relief is DENIED.

IT IS THEREFORE ORDERED THAT:

This Court assumes exclusive jurisdiction over all assets, monies, securities, and property (whether real or personal, tangible or intangible) of whatever

5821917.3

V02150P1310

kind and character, wherever located, which directly or indirectly belong to the Trust in whole or in part ("Receivership Assets"). The Court also assumes exclusive jurisdiction over all books, records, and other informational and electronic documents that belong to the Trust or relate in any way to the Receivership Assets ("Receivership Records").

2. Phil Hardberger and Arthur Bayern, residents of San Antonio, Bexar County, Texas, and citizens and qualified voters of Texas, are hereby appointed Co-Receivers of the Receivership Assets and Receivership Records (collectively, the "Receivership Estate"). Each shall file a bond in the amount of $.*500,000.00*, conditioned *BLS* *&R* as provided by law and approved by this Court. The costs of such bonds shall be paid from the Receivership Estate. However, considering the growing volume of the collateral litigation, all significant decisions will be presented for court approval so they will share in the court's judicial immunity. The co-receivers are encouraged not to duplicate work in separate law firms but reach an agreement on division of duties. *This Order is further Conditioned on Petitioner Renee Benson posting a bond in the amount of $500,000.00.*

3. On filing their bonds, together with the oath prescribed by law, the *BLS* *&R* Receivers are authorized, subject to the control of this Court, to do any and all acts necessary to the proper and lawful conduct of the Receivership, and to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to the Receivership Estate.

2

4. The Receivers are ordered to well and faithfully perform the duties of their office; to timely account for all monies, securities, and other properties which may come into their hands as Receivers; to be compensated for their services on an hourly-fee basis; to hire professionals, as the Receivers deem necessary or advisable, to provide services to the Receivers or the Receivership Estate; to file periodic applications for this Court to approve the payment of their fees and those of any professionals they may hire; and to abide by and perform all duties set forth in this Order and as required by law.

5. As of the date of the entry of this Order, the Receivers are, subject to the control of this Court, also specifically directed and authorized to perform the following acts and duties:

    (a) Take possession of the Receivership Estate, insure it against hazards and risks, and attend to its maintenance.

    (b) Manage and direct the business and fmancial affairs of the Receivership Estate and any entity owned or controlled by the Receivership Estate (consistent with the proportion of ownership or control held by the Receivership Estate);

    (c) Retain or remove, as the Receivers deem necessary or advisable, any officer, director, independent contractor, employee or agent of the Receivership Estate.

    (d) Collect, marshal, and take custody, control, and possession of all assets traceable to the Receivership Estate in whole or in part,

3

5821917.3

V02150P1312

wherever situated, including the income and profit therefrom and all sums of money now or hereafter due or owing to the Receivership Estate.

(e) Collect, receive, and take possession of all goods, chattel, rights, credits, momes, effects, lands, leases, books and records, work papers, records of account, including computer maintained information, contracts, financial records, monies on hand in banks and other financial initiations, and other papers of individuals, partnerships, or corporations whose interests are now directly or indirectly held by or under the direction, possession, custody, or control of the Receivership Estate.

(f) Institute such actions or proceedings to impose a constructive trust, obtain possession of property or assets, avoid transfers or obligations, seek damages, and/or recover judgment with respect to any assets or records that are traceable to the Receivership Estate in whole or in part or any persons who may have caused an injury to the Receivership Estate.

(g) Obtain, by presentation of this Order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify

4

5821917.3

V02150P1313

accounts, properties, liabilities, and causes of action of the Receivership Estate.

(h)     Make such ordinary and necessary transfers, payments, distributions, and disbursements as the Receivers deem advisable or proper for the maintenance or preservation of the Receivership Estate.

(i)     Perform all acts necessary to conserve, hold, manage, and preserve the value of the Receivership Estate, in order to prevent any irreparable loss, damage, and injury to the Estate.

(j) Obtain any insurance, including but not limited to errors and omissions insurance, related to the performance of the Receivers' duties under this Order, with the costs of such insurance to be paid from the Receivership Estate.

(k)     Enter into such agreements in connection with the administration of the Receivership Estate, including, but not limited to, the employment of such managers, agents, custodians, consultants, investigators, attorneys, and accountants as the Receivers judge necessary to perform the duties set forth in this Order and to compensate them from the Receivership Estate. The Receivers are specifically authorized to hire Cox Smith Matthews Incorporated and Langley & Bannack, Inc.

5

5821917.3

V0215OP1314

(l)    Collect and compromise demands, institute, prosecute, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal courts that the Receivers deem necessary and advisable to preserve the value of the Receivership Estate, or that the Receivers deem necessary and advisable to carry out the Receivers' mandate under this Order and any subsequent order and likewise to defend, compromise, or adjust or otherwise dispose of any or all actions or proceedings instituted against the Receivership Estate that the Receivers deem necessary and advisable to carry out the Receivers' mandate under this Order and any subsequent order.

6.    It is further ordered that the Receivers must, within _30_ days of their qualification, file in this action an inventory of all property of which the Receivers have taken possession. If the Receivers subsequently identify or come into possession of additional property, then they shall file a supplemental inventory as soon as practical.

7.    The powers and duties of the Temporary Co-Receivers are prescribed by this Order. Their duties and obligations run to this Court. They are not appointed to serve as trustees of the Trust and do not, by accepting this appointment, assume fiduciary or other duties that a trustee would owe to beneficiaries. However, the Receivers may, in the exercise of their discretion and judgment, respond to requests or other inquiries made by the parties to this proceeding or beneficiaries of the Trust.

6

5821917.3

V02150P1315

8. It is further ordered that all persons who receive notice of this Order are enjoined from taking any actions to transfer, withdraw, conceal or encumber any property of the Receivership Estate, and shall not take any action to interfere with the Receivers' exclusive possession of the property of the Receivership Estate. Any such interference may be punished by contempt.

SIGNED and ENTERED on this the ___9th___ day of February, 2015.

_____
The Honorable Tom Rickhoff

FILED

FEB 10 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEXAS
BY_____
DEPUTY

5821917.3

V02150P1316

# TAB B

Addendum to Order (CR 84 – 88)

FILED

FEB 1 0 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEXAS

BY: _____
DEPUTY

## PRELIMINARIES

All preliminary matters were resolved by agreement prior to the hearing primarily through the courts pre-hearing "Inquiry of the court" and the responses thereto by the parties. (Appellate exhibits 1, 2 & 3) The parties agreed the court had jurisdiction and venue and that all notices and services were complete and no party, attorney or the court, had a conflict. The attorneys representing the trustee were admitted properly by Pro Hac Vice and no recusal or continuances were requested. Counsel for the trustee objected to media recording. That request was granted as the Texas Supreme Court rule of one by notice to the clerk was not satisfied.

All counsel were advised of the court's intention to appoint receivers at the conclusion of the hearing. That notice is required when a receiver is to be appointed over real estate. The hearing was then continued until Monday, February 9, 2015 at 4:00 p.m. which was selected for the convenience of the attorneys for the trustee and the court.

## ACTION AND STATEMENTS OF THE TRUSTEE ADVERSELY AFFECTING THE TRUST

The court considered whether, within the four corners of the initial pleadings, and the resulting testimony, the court's ultimate decision, was compelled and no other. That is to temporarily suspend the trustee and temporarily appoint limited-power co-receivers. Significant actions by the trustee and his few known statements motivating those acts negatively impacted the trust and were of particular concern though all the acts of the trustee are considered.

The statement, "is my money safe?" made to the banker led to the disconcertingly sudden withdrawal of the trust funds and the trustees own funds. (The Trustee appeared to express unnecessary fear considering the harm to the trust that was likely to result). This was 12% of the banks capitalization and the bank is 97% owned by the trust. The trustee himself had appointed all the members of the bank's long-term executives and board. There appeared no reason why the funds would be safer at Frost and there was no evidence that these trust funds are still at Frost Bank. Both sides presented evidence that this action impaired the banks functions and could

1

84                    V02150P1317

cause other depositors concern. The court was left to wonder whether this was a rational fear and where the funds would go next.

"Take the trust and related records, secretly depart, and don't tell the beneficiaries where you are." This is a paraphrase of the trustee's words as delivered by the trustee's bookkeeper. Other than insuring that the beneficiaries could not be informed about the trust in the future, again a sudden departure from the historic trust relationship, this act had no purpose and no positive for the trust. It breached the relationship of trust that existed over the life of this only parent trustee and only child beneficiary.

"You are the only person I trust in San Antonio." The dealership General Manager quoted the trustee. The evidence was that the trustee had trusted relationships with an extensive array of key managers for many decades. Indeed long-term loyalty was a hallmark of his business. This statement, provided by the respondent's witness, unexplained by the trustee, along with the foregoing statements, carries a tone of sudden excessive fear. The court cannot deduce from the record how this feeling follows from the actions of the beneficiary but no acts of the daughter would seem to justify this conclusion that all long-term executive associates in San Antonio are disloyal or involved in a conspiracy.

"I want no contact with any of you… Sincerely yours" referring specifically to the beneficiaries. Though drafted by a lawyer friend, only the attorney for the trustee was left to explain its meaning. His conclusion is an opinion and the statements of his legal team are not evidence. The trustee, though available, did not appear. The bookkeeper testified she saw him in San Antonio earlier. This no contact statement is most contrary to the evident intention of the settlers of the trust at the time it was established. Again, the evidence of the daughter's behavior that would generate this anger was meager. The questions on cross-examination inferred that her lack of business acumen disappointed the trustee. However, the trustee is also father. He was known to revere family, church and friends, and particularly love his only surviving child. It appears extreme to disclaim all his parental care, a serious life-altering change at his age, when families celebrate parents and grandparents. Wretched relationships cannot be good for this trustee who suffered the tragic early loss of two children and two wives. Without apparent cause, the trustee stopped the $10,000 payments to the beneficiary after decades. The only explanation offered was he determined she could not function up to his standards as a businesswoman.

2

V0215OP1318

Apparently he has also fired the beneficiary, her son and daughter and collapsed her business, Renson, which administered the key car dealerships which are trust property. If he was disappointed in her business sophistication and he unemployed her, it seems he would continue payments.

HEALTH

The trustee is 87 ½ years old with a quadruple bypass, numerous recent hospitalizations and surgeries, macular degeneration, a concussion and other health problems not well established by the evidence. However, all the direct evidence and all the witnesses agreed; there are substantial health issues and this trustee does not seem to be improving. "He is not the same"/ "He is the same", all lay opinions, most by witnesses lacking direct contact. There were vague references to an Internist, Dr. Goldman and a Dr. Harris. It would be hard to find a reported case with more health issues and less professional analysis. While the court considers only the evidence from this case, the court is not obligated to ignore four decades of experience, largely in specialty courts that deal with the vulnerable. Nor should the courts take nothing away from mandated continuing legal education which most recently featured Lady Astor Regrets and the Glasser case, cited in this courts "Inquiry." This court has significant experience with the scenario presented including thousands of open guardianships and has never established or rejected a permanent guardianship without the testimony of a medical doctor. Without one, the court finds it impossible to draw accurate conclusions about the trustee's health but the court need not. The trustee himself confesses that "at my age" the pressures are too much.

This court was without the benefit of witnesses who are at arms-length with the trustee, like; spouse, doctor, nurse, nutritionist, surgeon, dismissed caregivers, housekeeper, cook, someone. The trustee appeared only briefly in the media clips. While the court always maintained the finding on capacity would remain in New Orleans, the forum that is proper and the litigant's choice, this court cannot disregard the issue of the trustee's fitness to serve.

THE WITNESS

It is unusual that all the witnesses were forthright, deliberate, professional and credible. More remarkable, they did not conflict on essential facts, i.e. the no contact note, movement of trust records and money. This is a tribute to the trustee's judgment of character and the settlers

3

V02150P1319

parenting skills. But, the remainder of their testimony was opinion and speculation following questions like "Why do you think the trustee....?" "Would it surprise you that....?"

THE CONTENTIONS

It appears the movant by the evidence and pleadings alleges incapacity, undue influence and elder abuse (isolating the trustee from his family). This court finds it unnecessary to reach these issues and cannot with this evidence. It is sufficient to consider only the trustee's actions and statements and whether they damaged the trust, not why he acted, perplexing as that is.

It appears the respondent trustee's defense is that his actions do not constitute a trust breach. The court disagrees. The court allowed the respondent the past three days to reverse his decisions, such as returning all the funds, releasing the records and an opportunity to explain his statements. Now the court is forced to appoint receivers with the expertise and stature to reverse, where appropriate, these decisions and limit, if possible, the damage to this trust. The court charges the receiver with these responsibilities and urges them to surrender other law firm work in order to intensify the first month efforts. This will be expensive, but necessary. The actions of the trustee will likely damage the trustee's local brand significantly over this next year if not reversed soon and if the major interested parties are not reassured that the previous status quo obtain accompanied by stability and calmness. (One executive resigned duties while on the stand). Time is of the essence. Early efforts will generate less ultimate costs and make for a shorter receivership. Receivers are advised to get court approval for all significant decisions to insure their efforts are transparent, to the parties and court, so that the court's judicial immunity will enure to them.

Because the trustee served decades with generosity and distinction, the court is most hesitant to intervene and suspend him. The court is also loath to participate in an endless, costly Dickensian kerfuffle and will be vigilant to extricate the receivers. However, it is obvious that the trustee is facing the pressures of; the overreaching expectations of sports fans, the media's scrutiny, an interdiction contest with the beneficiary, a potential dispute over related trusts with huge assets as well as a likely pre-death will contest. All litigation where the trustee and his only child are the principal adversaries. Even this revered trustee is mortal and no court should be

4

complicit in allowing him more than he can bear if a reasonable and safe alternative is found to "assist" him.

V02150P1321

# TAB C

Amended Order Granting Injunction, Suspending Trustee
& Appointing Limited Temporary Co-Receivers with Restrictions
(CR 98 – 109)

CAUSE NO. 155,572

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| SHIRLEY L. BENSON, | § | NUMBER TWO |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

CAUSE NO. 155,572-A

| | | |
|---|---|---|
| RENEE BENSON | § | IN THE PROBATE COURT |
| | § | |
| v. | § | |
| | § | NUMBER TWO |
| THOMAS MILTON BENSON, JR., AS | § | |
| TRUSTEE OF THE SHIRLEY L. | § | |
| BENSON TESTAMENTARY TRUST | § | BEXAR COUNTY, TEXAS |

## AMENDED ORDER GRANTING INJUNCTION, SUSPENDING TRUSTEE & APPOINTING LIMITED TEMPORARY CO-RECEIVERS WITH RESTRICTIONS

The Court has considered the request of Renee Benson, Petitioner, for an injunction for the suspension of the trustee and for the appointment of a temporary receiver and receivers to serve as set out in her Original Petition for Removal of Trustee and Application for Temporary Injunctive Relief. The court responds with a limited temporary appointment of co-receivers with restrictions (hereinafter co-receivers) for the Shirley L. Benson Testamentary Trust (the "Trust") and the Estate of Shirley L. Benson (the "Estate"). Such appointment is immediately necessary for purposes of managing and conserving the Trust's and the Estate's property during litigation, the collateral litigation in Louisiana or until the parties resolve their dispute and a family trustee qualifies, and the need for court action no longer exists.

The appointment of co-receivers for the Trust's and the Estate's property is warranted on equitable grounds and under Texas Property Code § 114.008(a)(5) and Texas Civil Practice and Remedies Code § 64.001(a). The court realizes and acknowledges that the trustee has served

V02150P7613

competently for decades and deserves to know why the court acted. The court's reasons are found in the addendum attached hereto.

The powers and duties of the temporary co-receivers are set forth in this Order. To the extent that Petitioner seeks to require the temporary co-receivers to fulfill all duties and responsibilities that trustees owe to beneficiaries arising under statutory law, common law, or trust instruments, including any fiduciary duties, such relief is DENIED.

IT IS THEREFORE ORDERED THAT:

1. This Court assumes exclusive jurisdiction over all assets, monies, securities, and property (whether real or personal, tangible or intangible) of whatever kind and character, wherever located, which directly or indirectly belong to the Trust or the Estate in whole or in part ("Receivership Assets") and the court assumes the power to determine what assets are properly that of the "Estate" and which are properly that of the "Trust". The Court also assumes exclusive jurisdiction over all books, records, and other informational and electronic documents that belong to the Trust or the Estate or relate in any way to the Receivership Assets ("Receivership Records") and the court assumes the power to determine what documents relate to the "Estate and which relate to the "Trust".

2. Phil Hardberger and Arthur Bayern, residents of San Antonio, Bexar County, Texas, and citizens and qualified voters of Texas, are hereby appointed Co-Receivers of the Receivership Assets and Receivership Records (collectively, the "Receivership Estate"). Each shall file a bond in the amount of $500,000.00, conditioned as provided by law and approved by this Court. The costs of such bonds shall be paid from the Receivership Estate. However, considering the growing volume of the collateral litigation, all significant decisions will be presented for court approval so they will share in the court's judicial immunity. The co-receivers

are encouraged not to duplicate work in separate law firms but reach an agreement on division of duties. This Order is further conditioned on Petitioner Renee Benson posting a bond in the amount of $500,000.00.

3. On filing their bonds, together with the oath prescribed by law, the Receivers are authorized, subject to the control of this Court, to do any and all acts necessary to the proper and lawful conduct of the Receivership, and to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to the Receivership Estate.

4. The Receivers are ordered to well and faithfully perform the duties of their office; to timely account for all monies, securities, and other properties which may come into their hands as Receivers; to be compensated for their services on an hourly-fee basis; to hire professionals, as the Receivers deem necessary or advisable, to provide services to the Receivers or the Receivership Estate; to file periodic applications for this Court to approve the payment of their fees and those of any professionals they may hire; and to abide by and perform all duties set forth in this Order and as required by law.

5. As of the date of the entry of this Order, the Receivers are, subject to the control of this Court, also specifically directed and authorized to perform the following acts and duties:

    (a)    Identify and take possession of the Receivership Estate after determining the extent of co-ownership with assets held by others or other entities not before the court, insure it against hazards and risks, and attend to its maintenance.

    (b)    Manage and direct the business and financial affairs of the Receivership Estate and any entity owned or controlled by the Receivership Estate

(consistent with the proportion of ownership or control held by the Receivership Estate);

(c) With the Court's consent, retain or remove, as the Receivers deem necessary or advisable, any officer, director, independent contractor, employee or agent of the Receivership Estate.

(d) Collect, marshal, and take custody, control, and possession of all assets traceable to the Receivership Estate in whole or in part, wherever situated, including the income and profit therefrom and all sums of money now or hereafter due or owing to the Receivership Estate.

(e) Collect, receive, and take possession of all goods, chattel, rights, credits, monies, effects, lands, leases, books and records, work papers, records of account, including computer maintained information, contracts, financial records, monies on hand in banks and other financial initiations, and other papers of individuals, partnerships, or corporations whose interests are now directly or indirectly held by or under the direction, possession, custody, or control of the Receivership Estate.

(f) With the consent of the Court, institute such actions or proceedings to impose a constructive trust, determine the assets of the "Estate" or "Trust" and then to obtain possession of property or assets, avoid transfers or obligations, seek damages, and/or recover judgment with respect to any assets or records that are traceable to the Receivership Estate in whole or in part or any persons who may have caused an injury to the Receivership Estate.

V02150P7616

(g) Obtain, by presentation of this Order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, liabilities, and causes of action of the Receivership Estate.

(h) Make such ordinary and necessary transfers, payments, distributions, and disbursements as the Receivers deem advisable or proper for the maintenance or preservation of the Receivership Estate.

(i) Perform all acts necessary to conserve, hold, manage, and preserve the value of the Receivership Estate, in order to prevent any irreparable loss, damage, and injury to the Estate.

(j) Obtain any insurance, including but not limited to errors and omissions insurance, related to the performance of the Receivers' duties under this Order, with the costs of such insurance to be paid from the Receivership Estate.

(k) Enter into such agreements in connection with the administration of the Receivership Estate, including, but not limited to, the employment of such managers, agents, custodians, consultants, investigators, attorneys, and accountants as the Receivers judge necessary to perform the duties set forth in this Order and to compensate them from the Receivership Estate. The Receivers are specifically authorized to hire Cox Smith Matthews Incorporated and Langley & Banack, Inc.

(l) With the Court's consent, collect and compromise demands, institute, prosecute, compromise, adjust, intervene in, or become party to such

V02150P7617

actions or proceedings in state or federal courts that the Receivers deem necessary and advisable to preserve the value of the Receivership Estate, or that the Receivers deem necessary and advisable to carry out the Receivers' mandate under this Order and any subsequent order and likewise to defend, compromise, or adjust or otherwise dispose of any or all actions or proceedings instituted against the Receivership Estate that the Receivers deem necessary and advisable to carry out the Receivers' mandate under this Order and any subsequent order.

6. It is further ordered that the Receivers must, within 30, days of their qualification, file in this action an inventory of all property of which the Receivers have taken possession. If the Receivers subsequently identify or come into possession of additional property, then they shall file a supplemental inventory as soon as practical.

7. The powers and duties of the temporary co-receivers are prescribed by this Order. Their duties and obligations run to this Court. They are not appointed to serve as trustees of the Trust and do not, by accepting this appointment, assume fiduciary or other duties that a trustee would owe to beneficiaries. However, the Receivers are encouraged by the Court to be transparent with the parties and collateral parties on all substantive anticipated actions and they may, in the exercise of their discretion and judgment, respond to requests or other inquiries made by the parties to this proceeding or beneficiaries of the Trust.

8. It is further ordered that all persons who receive notice of this Order are enjoined from taking any actions to transfer, withdraw, conceal or encumber any property of the Receivership Estate, and shall not take any action to interfere with the Receivers' exclusive

V0 2 I 5 0 P 1 b I 8

possession of the property of the Receivership Estate. Any such interference may be punished by contempt.

9. It is further ordered that the injunction requested by Renee Benson is GRANTED and that Thomas Milton Benson, Jr. be and is hereby suspended from serving as Trustee of the Trust and the Co-Receivers are appointed.

SIGNED and ENTERED on this the ___ day of February, 2015.

The Honorable Tom Rickhoff

FILED

FEB 1 8 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEXAS

BY: _____
DEPUTY

V02150P7619.

Addendum to Order

PRELIMINARIES

All preliminary matters were resolved by agreement prior to the hearing primarily through the courts pre-hearing "Inquiry of the court" and the responses thereto by the parties. (Appellate exhibits 1, 2 & 3) The parties agreed the court had jurisdiction and venue and that all notices and services were complete and no party, attorney or the court, had a conflict. The attorneys representing the trustee were admitted properly by Pro Hac Vice and no recusal or continuances were requested. Counsel for the trustee objected to media recording. That request was granted as the Texas Supreme Court rule of one by notice to the clerk was not satisfied.

All counsel were advised of the court's intention to appoint receivers at the conclusion of the hearing. That notice is required when a receiver is to be appointed over real estate. The hearing was then continued until Monday, February 9, 2015 at 4:00 p.m. which was selected for the convenience of the attorneys for the trustee and the court.

ACTION AND STATEMENTS OF THE TRUSTEE ADVERSELY AFFECTING THE TRUST

The court considered whether, within the four corners of the initial pleadings, and the resulting testimony, the court's ultimate decision, was compelled and no other. That is to temporarily suspend the trustee and temporarily appoint limited-power co-receivers. Significant actions by the trustee and his few known statements motivating those acts negatively impacted the trust and were of particular concern though all the acts of the trustee are considered.

The statement, "is my money safe?" made to the banker led to the disconcertingly sudden withdrawal of the trust funds and the trustees own funds. (The Trustee appeared to express unnecessary fear considering the harm to the trust that was likely to result). This was 12% of the banks capitalization and the bank is 97% owned by the trust. The trustee himself had appointed all the members of the bank's long-term executives and board. There appeared no reason why the funds would be safer at Frost and there was no evidence that these trust funds are still at Frost Bank. Both sides presented evidence that this action impaired the banks functions and could

1

V02I50P7b20

cause other depositors concern. The court was left to wonder whether this was a rational fear and where the funds would go next.

"Take the trust and related records, secretly depart, and don't tell the beneficiaries where you are." This is a paraphrase of the trustee's words as delivered by the trustee's bookkeeper. Other than insuring that the beneficiaries could not be informed about the trust in the future, again a sudden departure from the historic trust relationship, this act had no purpose and no positive for the trust. It breached the relationship of trust that existed over the life of this only parent trustee and only child beneficiary.

"You are the only person I trust in San Antonio." The dealership General Manager quoted the trustee. The evidence was that the trustee had trusted relationships with an extensive array of key managers for many decades. Indeed long-term loyalty was a hallmark of his business. This statement, provided by the respondent's witness, unexplained by the trustee, along with the foregoing statements, carries a tone of sudden excessive fear. The court cannot deduce from the record how this feeling follows from the actions of the beneficiary but no acts of the daughter would seem to justify this conclusion that all long-term executive associates in San Antonio are disloyal or involved in a conspiracy.

"I want no contact with any of you... Sincerely yours" referring specifically to the beneficiaries. Though drafted by a lawyer friend, only the attorney for the trustee was left to explain its meaning. His conclusion is an opinion and the statements of his legal team are not evidence. The trustee, though available, did not appear. The bookkeeper testified she saw him in San Antonio earlier. This no contact statement is most contrary to the evident intention of the settlers of the trust at the time it was established. Again, the evidence of the daughter's behavior that would generate this anger was meager. The questions on cross-examination inferred that her lack of business acumen disappointed the trustee. However, the trustee is also father. He was known to revere family, church and friends, and particularly love his only surviving child. It appears extreme to disclaim all his parental care, a serious life-altering change at his age, when families celebrate parents and grandparents. Wretched relationships cannot be good for this trustee who suffered the tragic early loss of two children and two wives. Without apparent cause, the trustee stopped the $10,000 payments to the beneficiary after decades. The only explanation offered was he determined she could not function up to his standards as a businesswoman.

2

V02150P7621

Apparently he has also fired the beneficiary, her son and daughter and collapsed her business, Renson, which administered the key car dealerships which are trust property. If he was disappointed in her business sophistication and he unemployed her, it seems he would continue payments.

HEALTH

The trustee is 87 ½ years old with a quadruple bypass, numerous recent hospitalizations and surgeries, macular degeneration, a concussion and other health problems not well established by the evidence. However, all the direct evidence and all the witnesses agreed; there are substantial health issues and this trustee does not seem to be improving. "He is not the same"/ "He is the same", all lay opinions, most by witnesses lacking direct contact. There were vague references to an internist, Dr. Goldman and a Dr. Harris. It would be hard to find a reported case with more health issues and less professional analysis. While the court considers only the evidence from this case, the court is not obligated to ignore four decades of experience, largely in specialty courts that deal with the vulnerable. Nor should the courts take nothing away from mandated continuing legal education which most recently featured Lady Astor Regrets and the Glasser case, cited in this courts "Inquiry." This court has significant experience with the scenario presented including thousands of open guardianships and has never established or rejected a permanent guardianship without the testimony of a medical doctor. Without one, the court finds it impossible to draw accurate conclusions about the trustee's health but the court need not. The trustee himself confesses that "at my age" the pressures are too much.

This court was without the benefit of witnesses who are at arms-length with the trustee, like; spouse, doctor, nurse, nutritionist, surgeon, dismissed caregivers, housekeeper, cook, someone. The trustee appeared only briefly in the media clips. While the court always maintained the finding on capacity would remain in New Orleans, the forum that is proper and the litigant's choice, this court cannot disregard the issue of the trustee's fitness to serve.

THE WITNESS

It is unusual that all the witnesses were forthright, deliberate, professional and credible. More remarkable, they did not conflict on essential facts, i.e. the no contact note, movement of trust records and money. This is a tribute to the trustee's judgment of character and the settlers

3

V02150P1622

parenting skills. But, the remainder of their testimony was opinion and speculation following questions like "Why do you think the trustee....?" "Would it surprise you that....?"

THE CONTENTIONS

It appears the movant by the evidence and pleadings alleges incapacity, undue influence and elder abuse (isolating the trustee from his family). This court finds it unnecessary to reach these issues and cannot with this evidence. It is sufficient to consider only the trustee's actions and statements and whether they damaged the trust, not why he acted, perplexing as that is.

It appears the respondent trustee's defense is that his actions do not constitute a trust breach. The court disagrees. The court allowed the respondent the past three days to reverse his decisions, such as returning all the funds, releasing the records and an opportunity to explain his statements. Now the court is forced to appoint receivers with the expertise and stature to reverse, where appropriate, these decisions and limit, if possible, the damage to this trust. The court charges the receiver with these responsibilities and urges them to surrender other law firm work in order to intensify the first month efforts. This will be expensive, but necessary. The actions of the trustee will likely damage the trustee's local brand significantly over this next year if not reversed soon and if the major interested parties are not reassured that the previous status quo obtain accompanied by stability and calmness. (One executive resigned duties while on the stand). Time is of the essence. Early efforts will generate less ultimate costs and make for a shorter receivership. Receivers are advised to get court approval for all significant decisions to insure their efforts are transparent to the parties and court, so that the court's judicial immunity will enure to them.

Because the trustee served decades with generosity and distinction, the court is most hesitant to intervene and suspend him. The court is also loath to participate in an endless, costly Dickensian kerfuffle and will be vigilant to extricate the receivers. However, it is obvious that the trustee is facing the pressures of; the overreaching expectations of sports fans, the media's scrutiny, an interdiction contest with the beneficiary, a potential dispute over related trusts with huge assets as well as a likely pre-death will contest. All litigation where the trustee and his only child are the principal adversaries. Even this revered trustee is mortal and no court should be

4

V02150P7623

complicit in allowing him more than he can bear if a reasonable and safe alternative is found to "assist" him.

5

V02150P7624

# TAB D

Second Amended Order Granting Injunction, Suspending Trustee
& Appointing Limited Temporary Co-Receivers with Restrictions
(1 Supp CR 4 – 17)

CAUSE NO. 155,572

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| SHIRLEY L. BENSON, | § | NUMBER TWO |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

CAUSE NO. 155,572-A

| | | |
|---|---|---|
| RENEE BENSON | § | IN THE PROBATE COURT |
| | § | |
| v. | § | |
| | § | NUMBER TWO |
| THOMAS MILTON BENSON, JR., AS | § | |
| TRUSTEE OF THE SHIRLEY L. | § | |
| BENSON TESTAMENTARY TRUST | § | BEXAR COUNTY, TEXAS |

## SECOND AMENDED ORDER GRANTING INJUNCTION, SUSPENDING TRUSTEE & APPOINTING LIMITED TEMPORARY CO-RECEIVERS WITH RESTRICTIONS

The Court has considered the request of Renee Benson, Petitioner, for an injunction for the suspension of the trustee and for the appointment of a temporary receiver and receivers to serve as set out in her Original Petition for Removal of Trustee and Application for Temporary Injunctive Relief. The court responds with a limited temporary appointment of co-receivers with restrictions (hereinafter co-receivers) for the Shirley L. Benson Testamentary Trust (the "Trust") and the Estate of Shirley L. Benson (the "Estate"). Such appointment is immediately necessary for purposes of managing and conserving the Trust's and the Estate's property during litigation, the collateral litigation in Louisiana or until the parties resolve their dispute and a family trustee qualifies, and the need for court action no longer exists.

The appointment of co-receivers for the Trust's and the Estate's property is warranted on equitable grounds and under Texas Property Code § 114.008(a)(5) and Texas Civil Practice and Remedies Code § 64.001(a). The court realizes and acknowledges that the trustee has served

V02451P1240

competently for decades and deserves to know why the court acted. The court's reasons are found in the addendum attached hereto.

The powers and duties of the temporary co-receivers are set forth in this Order. To the extent that Petitioner seeks to require the temporary co-receivers to fulfill all duties and responsibilities that trustees owe to beneficiaries arising under statutory law, common law, or trust instruments, including any fiduciary duties, such relief is DENIED.

It clearly appears from the evidence that unless Respondent, THOMAS MILTON BENSON, JR., IN HIS CAPACITY AS TRUSTEE OF THE SHIRLEY L. BENSON TESTAMENTARY TRUST is temporarily enjoined from the acts described below, then Respondent or persons acting in concert with Respondent will commit such acts, and Petitioner will have no adequate remedy at law, and Petitioner will be irreparably harmed. The courts reasons are found in the attached addendum, which is hereby incorporated as part of this order. It is therefore ORDERED ADJUDGED AND DECREED that Respondent, THOMAS MILTON BENSON JR., IN HIS CAPACITY AS TRUSTEE OF THE SHIRLEY L. BENSON TESTAMENTARY TRUST and his agents servants, employees and attorneys, and all persons acting in concert with him or them who receive actual notice of this Order by personal service or otherwise, be and are hereby commanded to desist and refrain from:

a. Removing withdrawing, transferring assigning or selling to any other person or entity an of the assets of the Shirley L. Benson Testamentary Trust (the "Testamentary Trust") or the proceeds thereof;

b. Taking any action that causes or has the effect of causing the dissipation of assets or diminuition of value of the assets of the Testamentary trust, or of any remainder beneficiary's interest in the Testamentary Trust;

c. Removing, transferring or withdrawing assets of the Testamentary trust from any bank account, whether such bank account is currently titled in the name of the Testamentary Trust or otherwise

d. Removing, destroying, altering or in any way compromising books and records reflecting or relating to assets and liabilities of the Testamentary Trust

e. Removing or purporting to remove Rene Benson, R. Tom Roddy, Ryan LeBlanc or Rita Le Blanc from any position as an officer or director of any banking institution in which the testamentary trust owns an interest

f. Refusing to respond to a reasonable request by a beneficiary of the Testamentary Trust for disclosure of material known to the Trustee that might affect the beneficiary's rights concerning the trust and

g. Utilizing any funds or assets of the Testamentary trust to pay the Trustee's costs of defense in this action absent advance approval from this Court

IT IS THEREFORE ORDERED THAT:

1. This Court assumes exclusive jurisdiction over all assets, monies, securities, and property (whether real or personal, tangible or intangible) of whatever kind and character, wherever located, which directly or indirectly belong to the Trust or the Estate in whole or in part ("Receivership Assets") and the court assumes the power to determine what assets are properly that of the "Estate" and which are properly that of the "Trust". The Court also assumes exclusive jurisdiction over all books, records, and other informational and electronic documents that belong to the Trust or the Estate or relate in any way to the Receivership Assets ("Receivership Records") and the court assumes the power to determine what documents relate to the "Estate and which relate to the "Trust".

2. Phil Hardberger and Arthur Bayern, residents of San Antonio, Bexar County, Texas, and citizens and qualified voters of Texas, are hereby appointed Co-Receivers of the Receivership Assets and Receivership Records (collectively, the "Receivership Estate"). Each shall file a bond in the amount of $500,000.00, conditioned as provided by law and approved by this Court. The costs of such bonds shall be paid from the Receivership Estate. However, considering the growing volume of the collateral litigation, all significant decisions will be presented for court approval so they will share in the court's judicial immunity. The co-receivers are encouraged not to duplicate work in separate law firms but reach an agreement on division of duties. This Order is further conditioned on Petitioner Renee Benson posting a bond in the amount of $500,000.00.

3. On filing their bonds, together with the oath prescribed by law, the Receivers are authorized, subject to the control of this Court, to do any and all acts necessary to the proper and lawful conduct of the Receivership, and to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to the Receivership Estate.

4. The Receivers are ordered to well and faithfully perform the duties of their office; to timely account for all monies, securities, and other properties which may come into their hands as Receivers; to be compensated for their services on an hourly-fee basis; to hire professionals, as the Receivers deem necessary or advisable, to provide services to the Receivers or the Receivership Estate; to file periodic applications for this Court to approve the payment of their fees and those of any professionals they may hire; and to abide by and perform all duties set forth in this Order and as required by law.

VO2151P1243

5.     As of the date of the entry of this Order, the Receivers are, subject to the control of this Court, also specifically directed and authorized to perform the following acts and duties:

(a)     Identify and take possession of the Receivership Estate after determining the extent of co-ownership with assets held by others or other entities not before the court, insure it against hazards and risks, and attend to its maintenance.

(b)     Manage and direct the business and financial affairs of the Receivership Estate and any entity owned or controlled by the Receivership Estate (consistent with the proportion of ownership or control held by the Receivership Estate);

(c)     With the Court's consent, retain or remove, as the Receivers deem necessary or advisable, any officer, director, independent contractor, employee or agent of the Receivership Estate.

(d)     Collect, marshal, and take custody, control, and possession of all assets traceable to the Receivership Estate in whole or in part, wherever situated, including the income and profit therefrom and all sums of money now or hereafter due or owing to the Receivership Estate.

(e)     Collect, receive, and take possession of all goods, chattel, rights, credits, monies, effects, lands, leases, books and records, work papers, records of account, including computer maintained information, contracts, financial records, monies on hand in banks and other financial initiations, and other papers of individuals, partnerships, or corporations whose interests are

V02151P1244

now directly or indirectly held by or under the direction, possession, custody, or control of the Receivership Estate.

(f)     With the consent of the Court, institute such actions or proceedings to impose a constructive trust, determine the assets of the "Estate" or "Trust" and then to obtain possession of property or assets, avoid transfers or obligations, seek damages, and/or recover judgment with respect to any assets or records that are traceable to the Receivership Estate in whole or in part or any persons who may have caused an injury to the Receivership Estate.

(g)     Obtain, by presentation of this Order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, liabilities, and causes of action of the Receivership Estate.

(h)     Make such ordinary and necessary transfers, payments, distributions, and disbursements as the Receivers deem advisable or proper for the maintenance or preservation of the Receivership Estate.

(i)     Perform all acts necessary to conserve, hold, manage, and preserve the value of the Receivership Estate, in order to prevent any irreparable loss, damage, and injury to the Estate.

(j)     Obtain any insurance, including but not limited to errors and omissions insurance, related to the performance of the Receivers' duties under this Order, with the costs of such insurance to be paid from the Receivership Estate.

V02151P1245

(k)     Enter into such agreements in connection with the administration of the Receivership Estate, including, but not limited to, the employment of such managers, agents, custodians, consultants, investigators, attorneys, and accountants as the Receivers judge necessary to perform the duties set forth in this Order and to compensate them from the Receivership Estate. The Receivers are specifically authorized to hire Cox Smith Matthews Incorporated and Langley & Banack, Inc.

(l)     With the Court's consent, collect and compromise demands, institute, prosecute, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal courts that the Receivers deem necessary and advisable to preserve the value of the Receivership Estate, or that the Receivers deem necessary and advisable to carry out the Receivers' mandate under this Order and any subsequent order and likewise to defend, compromise, or adjust or otherwise dispose of any or all actions or proceedings instituted against the Receivership Estate that the Receivers deem necessary and advisable to carry out the Receivers' mandate under this Order and any subsequent order.

6.     It is further ordered that the Receivers must, within 30, days of their qualification, file in this action an inventory of all property of which the Receivers have taken possession. If the Receivers subsequently identify or come into possession of additional property, then they shall file a supplemental inventory as soon as practical.

7.     The powers and duties of the temporary co-receivers are prescribed by this Order. Their duties and obligations run to this Court. They are not appointed to serve as trustees of the

VO2151P1246

Trust and do not, by accepting this appointment, assume fiduciary or other duties that a trustee would owe to beneficiaries. However, the Receivers are encouraged by the Court to be transparent with the parties and collateral parties on all substantive anticipated actions and *they* may, in the exercise of their discretion and judgment, respond to requests or other inquiries made by the parties to this proceeding or beneficiaries of the Trust.

8.     It is further ordered that all persons who receive notice of this Order are enjoined from taking any actions to transfer, withdraw, conceal or encumber any property of the Receivership Estate, and shall not take any action to interfere with the Receivers' exclusive possession of the property of the Receivership Estate. Any such interference may be punished by contempt.

9.     It is further ordered that the injunction requested by Renee Benson is **GRANTED** and that Thomas Milton Benson, Jr. be and is hereby suspended from serving as Trustee of the Trust and the Co-Receivers are appointed.

10.     IT IS FURTHER ORDERED that the final trial on this matter is hereby set for the 1st day of September, 2015 commencing at 9:30 a.m. in the courtroom of Probate Court No. 2, Bexar County, Texas.

IT IS FURTHER ORDERED that the clerk of this Court shall forthwith, on the filing by Petitioner of the bond herein required and on the approval of same, according to law, issue a Writ of Temporary Injunction in conformity with the law and terms of this Order. it is further OREDERED that this temporary injunction shall not be effective unless Petitioner executes and files with the Court, a bond in conformity with the law, in the total amount of $500 which may be filed in cash, at Petitioner's option. The cash deposited in lieu of a TRO bond previously

V02151P1247

posted by Petitioner is hereby ORDRERED released, so as to be immediately applied by the clerk towards the Temporary Injunction bond herein set.

SIGNED and ENTERED on this the ___2___ day of March, 2015.

_____
The Honorable Tom Rickhoff

FILED

MAR 0 2 2015

GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEXAS
BY: _____
DEPUTY

## Addendum to Order

## PRELIMINARIES

All preliminary matters were resolved by agreement prior to the hearing primarily through the courts pre-hearing "Inquiry of the court" and the responses thereto by the parties. (Appellate exhibits 1, 2 & 3) The parties agreed the court had jurisdiction and venue and that all notices and services were complete and no party, attorney or the court, had a conflict. The attorneys representing the trustee were admitted properly by Pro Hac Vice and no recusal or continuances were requested. Counsel for the trustee objected to media recording. That request was granted as the Texas Supreme Court rule of one by notice to the clerk was not satisfied.

All counsel were advised of the court's intention to appoint receivers at the conclusion of the hearing. That notice is required when a receiver is to be appointed over real estate. The hearing was then continued until Monday, February 9, 2015 at 4:00 p.m. which was selected for the convenience of the attorneys for the trustee and the court.

## ACTION AND STATEMENTS OF THE TRUSTEE ADVERSELY AFFECTING THE TRUST

The court considered whether, within the four corners of the initial pleadings, and the resulting testimony, the court's ultimate decision, was compelled and no other. That is to temporarily suspend the trustee and temporarily appoint limited-power co-receivers. Significant actions by the trustee and his few known statements motivating those acts negatively impacted the trust and were of particular concern though all the acts of the trustee are considered.

The statement, "is my money safe?" made to the banker led to the disconcertingly sudden withdrawal of the trust funds and the trustees own funds. (The Trustee appeared to express unnecessary fear considering the harm to the trust that was likely to result). This was 12% of the banks capitalization and the bank is 97% owned by the trust. The trustee himself had appointed all the members of the bank's long-term executives and board. There appeared no reason why the funds would be safer at Frost and there was no evidence that these trust funds are still at Frost Bank. Both sides presented evidence that this action impaired the banks functions and could

1

V02I50P1620

V02I51P1249   13

cause other depositors concern. The court was left to wonder whether this was a rational fear and where the funds would go next.

"Take the trust and related records, secretly depart, and don't tell the beneficiaries where you are." This is a paraphrase of the trustee's words as delivered by the trustee's bookkeeper. Other than insuring that the beneficiaries could not be informed about the trust in the future, again a sudden departure from the historic trust relationship, this act had no purpose and no positive for the trust. It breached the relationship of trust that existed over the life of this only parent trustee and only child beneficiary.

"You are the only person I trust in San Antonio." The dealership General Manager quoted the trustee. The evidence was that the trustee had trusted relationships with an extensive array of key managers for many decades. Indeed long-term loyalty was a hallmark of his business. This statement, provided by the respondent's witness, unexplained by the trustee, along with the foregoing statements, carries a tone of sudden excessive fear. The court cannot deduce from the record how this feeling follows from the actions of the beneficiary but no acts of the daughter would seem to justify this conclusion that all long-term executive associates in San Antonio are disloyal or involved in a conspiracy.

"I want no contact with any of you... Sincerely yours" referring specifically to the beneficiaries. Though drafted by a lawyer friend, only the attorney for the trustee was left to explain its meaning. His conclusion is an opinion and the statements of his legal team are not evidence. The trustee, though available, did not appear. The bookkeeper testified she saw him in San Antonio earlier. This no contact statement is most contrary to the evident intention of the settlers of the trust at the time it was established. Again, the evidence of the daughter's behavior that would generate this anger was meager. The questions on cross-examination inferred that her lack of business acumen disappointed the trustee. However, the trustee is also father. He was known to revere family, church and friends, and particularly love his only surviving child. It appears extreme to disclaim all his parental care, a serious life-altering change at his age, when families celebrate parents and grandparents. Wretched relationships cannot be good for this trustee who suffered the tragic early loss of two children and two wives. Without apparent cause, the trustee stopped the $10,000 payments to the beneficiary after decades. The only explanation offered was he determined she could not function up to his standards as a businesswoman.

2

V0215OP7621

V02151P1250 14

Apparently he has also fired the beneficiary, her son and daughter and collapsed her business, Renson, which administered the key car dealerships which are trust property. If he was disappointed in her business sophistication and he unemployed her, it seems he would continue payments.

HEALTH

The trustee is 87 ½ years old with a quadruple bypass, numerous recent hospitalizations and surgeries, macular degeneration, a concussion and other health problems not well established by the evidence. However, all the direct evidence and all the witnesses agreed; there are substantial health issues and this trustee does not seem to be improving. "He is not the same"/ "He is the same", all lay opinions, most by witnesses lacking direct contact. There were vague references to an internist, Dr. Goldman and a Dr. Harris. It would be hard to find a reported case with more health issues and less professional analysis. While the court considers only the evidence from this case, the court is not obligated to ignore four decades of experience, largely in specialty courts that deal with the vulnerable. Nor should the courts take nothing away from mandated continuing legal education which most recently featured Lady Astor Regrets and the Glasser case, cited in this courts "Inquiry." This court has significant experience with the scenario presented including thousands of open guardianships and has never established or rejected a permanent guardianship without the testimony of a medical doctor. Without one, the court finds it impossible to draw accurate conclusions about the trustee's health but the court need not. The trustee himself confesses that "at my age" the pressures are too much.

This court was without the benefit of witnesses who are at arms-length with the trustee, like; spouse, doctor, nurse, nutritionist, surgeon, dismissed caregivers, housekeeper, cook, someone. The trustee appeared only briefly in the media clips. While the court always maintained the finding on capacity would remain in New Orleans, the forum that is proper and the litigant's choice, this court cannot disregard the issue of the trustee's fitness to serve.

THE WITNESS

It is unusual that all the witnesses were forthright, deliberate, professional and credible. More remarkable, they did not conflict on essential facts, i.e. the no contact note, movement of trust records and money. This is a tribute to the trustee's judgment of character and the settlers

3

V02151P1251

V02150P7622

parenting skills. But, the remainder of their testimony was opinion and speculation following questions like "Why do you think the trustee....?" "Would it surprise you that....?"

## THE CONTENTIONS

It appears the movant by the evidence and pleadings alleges incapacity, undue influence and elder abuse (isolating the trustee from his family). This court finds it unnecessary to reach these issues and cannot with this evidence. It is sufficient to consider only the trustee's actions and statements and whether they damaged the trust, not why he acted, perplexing as that is.

It appears the respondent trustee's defense is that his actions do not constitute a trust breach. The court disagrees. The court allowed the respondent the past three days to reverse his decisions, such as returning all the funds, releasing the records and an opportunity to explain his statements. Now the court is forced to appoint receivers with the expertise and stature to reverse, where appropriate, these decisions and limit, if possible, the damage to this trust. The court charges the receiver with these responsibilities and urges them to surrender other law firm work in order to intensify the first month efforts. This will be expensive, but necessary. The actions of the trustee will likely damage the trustee's local brand significantly over this next year if not reversed soon and if the major interested parties are not reassured that the previous status quo obtain accompanied by stability and calmness. (One executive resigned duties while on the stand). Time is of the essence. Early efforts will generate less ultimate costs and make for a shorter receivership. Receivers are advised to get court approval for all significant decisions to insure their efforts are transparent to the parties and court, so that the court's judicial immunity will enure to them.

Because the trustee served decades with generosity and distinction, the court is most hesitant to intervene and suspend him. The court is also loath to participate in an endless, costly Dickensian kerfuffle and will be vigilant to extricate the receivers. However, it is obvious that the trustee is facing the pressures of; the overreaching expectations of sports fans, the media's scrutiny, an interdiction contest with the beneficiary, a potential dispute over related trusts with huge assets as well as a likely pre-death will contest. All litigation where the trustee and his only child are the principal adversaries. Even this revered trustee is mortal and no court should be

4

V0215IP1252₁₆

V02150P7623

complicit in allowing him more than he can bear if a reasonable and safe alternative is found to "assist" him.

5

V02150P7624

V02151P253  17

# TAB E

Notice of Accelerated Interloctory Appeal
(CR 110 – 112)

E-FILED
IN MATTERS PROBATE
Accepted 2/18/2015 2:37:39 PM
GERARD RICKHOFF
CLERK PROBATE COURTS
BEXAR COUNTY, TEXAS
BY
ROXANNE STRAIT

CAUSE NO. 155,572

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| SHIRLEY L. BENSON, | § | NO. 2 |
| | § | |
| Deceased, | § | BEXAR COUNTY, TEXAS |

CAUSE NO. 155,572-A

| | | |
|---|---|---|
| RENEE BENSON | § | IN THE PROBATE COURT |
| | § | |
| V. | § | |
| | § | NO. 2 |
| THOMAS MILTON BENSON, JR. | § | |
| As Trustee of the | § | |
| SHIRLEY L. BENSON | § | BEXAR COUNTY, TEXAS |
| TESTAMENTARY TRUST | § | |

## NOTICE OF ACCELERATED INTERLOCUTORY APPEAL

Respondent-Trustee THOMAS MILTON BENSON, JR. hereby gives notice that he desires to appeal from the Order Suspending Trustee & Appointing Temporary Co-Receivers With Restrictions signed on February 9, 2015 in Cause No. 155,572; *Estate of Shirley L. Benson, Deceased* and Cause No. 155,572-A, *Renee Benson v. Thomas Milton Benson, Jr., as Trustee of the Shirley L. Benson Testamentary Trust*, in the Probate Court Number 2 of Bexar County, Texas.

This accelerated appeal will be to the San Antonio Court of Appeals. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(1); Tex. R. App. P. 28.1(a).

1884.1/556847

110      V02150P5386

Submitted on: 2/18/2015 2:20:44 PM

February 18, 2015

Respectfully submitted,

**BECK | REDDEN LLP**

By: /s/ David J. Beck

David J. Beck
State Bar No. 00000070
Russell S. Post
State Bar No. 00797258
Troy Ford
State Bar No. 24032181
Owen J. McGovern
State Bar No. 24092804
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:  (713) 951-3700
Telecopier:  (713) 951-3720

And

**STONE PIGMAN WALTHER WITTMANN L.L.C.**
Phillip A Wittmann
(Admitted *pro hoc vice*)
546 Carondelet Street
New Orleans, Louisiana 70130-3558
Telephone: (504) 581-3200
Telecopier: (504) 581-3361

**ATTORNEYS FOR TRUSTEE THOMAS MILTON BENSON, JR.**
**As Trustee of the SHIRLEY L. BENSON TESTAMENTARY TRUST**

1884.1/556847

2

111

V02150P5387

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of foregoing document was served in compliance with the Texas Rules of Civil Procedure on February 18, 2015, on the following:

Bennett L. Stahl
**CURL STAHL GEIS**
**A PROFESSIONAL CORPORATION**
One Riverwalk Place
700 North St. Mary's Street, Suite 1800
San Antonio, Texas 78205
blstahl@csg-law.com

Emily Harrison Liljenwal
**SCHOENBAUM, CURPHY & SCANLAN, P.C.**
112 E. Pecan, Suite 3000
San Antonio, Texas 78205
eliljenwall@scs-law.com

**ATTORNEYS FOR PETITIONER**
**RENEE BENSON**

*/s/ David J. Beck*
**DAVID J. BECK**

# TAB F

(Amended) Notice of Accelerated Interloctory Appeal
(2 Supp CR _____)

E-FILED
IN MATTERS PROBATE
Accepted: 2/20/2015 1:49:18 PM
GERARD RICKHOFF
CLERK PROBATE COURTS
BEXAR COUNTY, TEXAS
BY:_____
ROXANNE STRAIT

CAUSE NO. 155,572

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| SHIRLEY L. BENSON, | § | NO. 2 |
| | § | |
| Deceased, | § | BEXAR COUNTY, TEXAS |

CAUSE NO. 155,572-A

| | | |
|---|---|---|
| RENEE BENSON | § | IN THE PROBATE COURT |
| | § | |
| V. | § | |
| | § | NO. 2 |
| THOMAS MILTON BENSON, JR. | § | |
| As Trustee of the | § | |
| SHIRLEY L. BENSON | § | BEXAR COUNTY, TEXAS |
| TESTAMENTARY TRUST | § | |

## NOTICE OF ACCELERATED INTERLOCUTORY APPEAL

Respondent-Trustee THOMAS MILTON BENSON, JR. hereby gives notice that he desires to appeal from the Amended Order Granting Injunction, Suspending Trustee & Appointing Limited Temporary Co-Receivers with Restrictions signed on February 18, 2015 in Cause No. 155,572; *Estate of Shirley L. Benson, Deceased* and Cause No. 155,572-A, *Renee Benson v. Thomas Milton Benson, Jr., as Trustee of the Shirley L. Benson Testamentary Trust*; in the Probate Court Number 2 of Bexar County, Texas. This order modifies a prior order, which is already on appeal in No. 04-15-00087-CV. *See* Tex. R. App. P. 27.3.

This accelerated appeal will be to the San Antonio Court of Appeals. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(1); Tex. R. App. P. 28.1(a).

1884 1/556909

February 19, 2015                            Respectfully submitted,

                                             BECK | REDDEN LLP

                              By:   */s/ David J. Beck*
                                    David J. Beck
                                    State Bar No. 00000070
                                    Russell S. Post
                                    State Bar No. 00797258
                                    Troy Ford
                                    State Bar No. 24032181
                                    Owen J. McGovern
                                    State Bar No. 24092804
                                    1221 McKinney Street, Suite 4500
                                    Houston, Texas 77010-2010
                                    Telephone:   (713) 951-3700
                                    Telecopier:  (713) 951-3720

                                    And

                                    **STONE PIGMAN WALTHER
                                    WITTMANN L.L.C.**
                                    Phillip A Wittmann
                                    (Admitted *pro hoc vice*)
                                    546 Carondelet Street
                                    New Orleans, Louisiana 70130-3558
                                    Telephone: (504) 581-3200
                                    Telecopier: (504) 581-3361

                                    **ATTORNEYS FOR TRUSTEE
                                    THOMAS MILTON BENSON, JR.
                                    As Trustee of the
                                    SHIRLEY L. BENSON
                                    TESTAMENTARY TRUST**

1884.1/556909                           2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of foregoing document was served in compliance with the Texas Rules of Civil Procedure on February 19, 2015, on the following:

Bennett L. Stahl
**CURL STAHL GEIS**
**A PROFESSIONAL CORPORATION**
One Riverwalk Place
700 North St. Mary's Street, Suite 1800
San Antonio, Texas 78205
blstahl@csg-law.com

Emily Harrison Liljenwal
**SCHOENBAUM, CURPHY & SCANLAN, P.C.**
112 E. Pecan, Suite 3000
San Antonio, Texas 78205
eliljenwall@scs-law.com

**ATTORNEYS FOR PETITIONER**
**RENEE BENSON**

*/s/ David J. Beck*
**DAVID J. BECK**

# TAB G

Second Amended Notice of Accelerated Interlocutory Appeal
(2 Supp CR _____)

CAUSE NO. 155,572

| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| SHIRLEY L. BENSON, | § | NO. 2 |
| | § | |
| Deceased, | § | BEXAR COUNTY, TEXAS |

CAUSE NO. 155,572-A

| RENEE BENSON | § | IN THE PROBATE COURT |
| | § | |
| V. | § | |
| | § | NO. 2 |
| THOMAS MILTON BENSON, JR. | § | |
| As Trustee of the | § | |
| SHIRLEY L. BENSON | § | BEXAR COUNTY, TEXAS |
| TESTAMENTARY TRUST | § | |

**SECOND AMENDED NOTICE OF ACCELERATED INTERLOCUTORY APPEAL**

Respondent-Trustee THOMAS MILTON BENSON, JR. hereby gives notice that he desires to appeal from the Second Amended Order Granting Injunction, Suspending Trustee & Appointing Limited Temporary Co-Receivers with Restrictions signed on March 2, 2015 in Cause No. 155,572; *Estate of Shirley L. Benson, Deceased* and Cause No. 155,572-A, *Renee Benson v. Thomas Milton Benson, Jr., as Trustee of the Shirley L. Benson Testamentary Trust*; in the Probate Court Number 2 of Bexar County, Texas. This order modifies a prior order, which is already on appeal in No. 04-15-00087-CV. *See* Tex. R. App. P. 27.3.

This accelerated appeal will be to the San Antonio Court of Appeals. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(1); Tex. R. App. P. 28.1(a).

1884.1/557510

March 4, 2015

Respectfully submitted,

BECK | REDDEN LLP

By:   */s/ David J. Beck*
      David J. Beck
      State Bar No. 00000070
      Russell S. Post
      State Bar No. 00797258
      Troy Ford
      State Bar No. 24032181
      Owen J. McGovern
      State Bar No. 24092804
      1221 McKinney Street, Suite 4500
      Houston, Texas 77010-2010
      Telephone:   (713) 951-3700
      Telecopier:   (713) 951-3720

      And

      STONE PIGMAN WALTHER
      WITTMANN L.L.C.
      Phillip A Wittmann
      (Admitted *pro hoc vice*)
      546 Carondelet Street
      New Orleans, Louisiana 70130-3558
      Telephone: (504) 581-3200
      Telecopier: (504) 581-3361

      ATTORNEYS FOR TRUSTEE
      THOMAS MILTON BENSON, JR.
      As Trustee of the
      SHIRLEY L. BENSON
      TESTAMENTARY TRUST

1884.1/557510                            2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of foregoing document was served in compliance with the Texas Rules of Civil Procedure on March 4, 2015, on the following:

Bennett L. Stahl
CURL STAHL GEIS
700 North St. Mary's Street, Suite 1800
San Antonio, TX 78205
blstahl@csg-law.com

Emily Harrison Liljenwall
SCHOENBAUM, CURPHY & SCANLAN, P.C.
112 E. Pecan, Suite 3000
San Antonio, TX 78205
eliljenwall@scs-law.com

Harriet O'Neill
LAW OFFICE OF HARRIET O'NEILL, P.C.
919 Congress Avenue, Suite 1400
Austin, TX 78701
honeill@harrietoneilllaw.com

Douglas Alexander
ALEXANDER, DUBOSE, JEFFERSON & TOWNSEND LLP
515 Congress Ave., Suite 2350
Austin, TX 78701
dalexander@adjtlaw.com

*Attorneys for Appellee Renee Benson*

*/s/ David J. Beck*
DAVID J. BECK

# TAB H

Last Will and Testament of Shirley L. Benson (PX1)

LAST WILL AND TESTAMENT

OF

SHIRLEY L. BENSON

155572

STATE OF TEXAS        §

COUNTY OF BEXAR       §

KNOW ALL MEN BY THESE PRESENTS:

That I, SHIRLEY L. BENSON, of Bexar County, Texas, do make, publish and declare this to be my Last Will and Testament, hereby revoking all Wills and Codicils heretofore made by me.

I.

I direct that my Independent Executor pay as conveniently as possible all of my just debts currently due, except that any debts that are payable in installments, or are not due until at least one year from the date of my death, need not be paid during the administration of my estate but may, if the terms of such debts permit, be continued and paid according to their current terms. I further direct that in the event that any property or interest in property passing under this Will, by operation of law, or otherwise by reason of my death (other than the part of my residuary estate), shall be encumbered by mortgage or lien, or shall be pledged to secure any obligation, it is my intention that such indebtedness shall not be charged to or paid from any estate, but that the devisee, legatee, or beneficiary receiving such property or interest in property shall take it subject to all encumbrances existing at the time of my death.

I direct that my Independent Executor shall pay as soon as convenient the cost of administration of my estate.

I direct that my Independent Executor pay out of my residuary estate, without apportionment, all estate, inheritance, succession and other taxes due by reason of my death.

II.

Provided he survives me by thirty (30) days, I give, devise and bequeath unto my husband, THOMAS MILTON BENSON, JR., all of my interest in the house or residence in which we may reside at the time of my death, all of my clothing, jewelry, personal belongings, household goods, furniture, furnishings and automobiles, and all other

PLAINTIFF'S
EXHIBIT
1

80122520

tangible personal property not otherwise specifically bequeathed (except cash on hand), owned by me at the time of my death. If my said husband shall not survive me by thirty (30) days, I bequeath all of the aforesaid property in equal shares unto my children (RENE BENSON, JEANNE MARIE BENSON and ROBERT CARTER BENSON) who shall be living at the time of my death.

III.

To the individuals listed below, I give, devise and bequeath the following:

A.    To my daughter, RENE BENSON, if she shall survive me, the sum of $25,000.00.

B.    To my daughter, JEANNE MARIE BENSON, if she shall survive me, the sum of $25,000.00.

C.    To my son, ROBERT CARTER BENSON, if he shall survive me, the sum of $25,000.00.

D.    To my nephew, LEONARD T. BENSON, if he shall survive me, all of my stock in Tom Benson Company, Inc. owned by me at the time of my death.  Customer Services, Inc., which is wholly owned by me, holds all of the stock in Tom Benson Company, Inc., owned by me.

E.    To J.J. BENSON, JR., if he shall survive me, the sum of $5,000.00.

F.    To MICHELLE BENSON ANDERSON, if she shall survive me, the sum of $5,000.00.

G.    To GISEL BENSON, if she shall survive me, the sum of $5,000.00.

H.    To CHARMAINE BENSON, if she shall survive me, the sum of $5,000.00.

I.    To PETER BENSON, if he shall survive me, the sum of $5,000.00.

J.    To CHARLES BENSON, if he shall survive me, the sum of $5,000.00.

K.    To ANDRE BENSON TOMASINI, if he shall survive me, the sum of $5,000.00.

L.    To DAVID BENSON, if he shall survive me, the sum of $5,000.00.

-2-

M. To SCOTT BENSON, if he shall survive me, the sum of $5,000.00.

N. To JENNY LEE CURRIE, if she shall survive me, the sum of $5,000.00.

O. To TOMMY CURRIE, if he shall survive me, the sum of $5,000.00.

P. To RONDA LANDRY, if she shall survive me, the sum of $5,000.00.

Q. To KEVIN LANDRY, if he shall survive me, the sum of $5,000.00.

R. To RENEE LANDRY, if she shall survive me, the sum of $5,000.00.

S. To STEVEN LANDRY, if he shall survive me, the sum of $5,000.00.

T. To CAROL BENSON, if she shall survive me, the sum of $5,000.00.

U. To RAMONA LANDRY, if she shall survive me, the sum of $5,000.00.

V. To ROSABELLE LANDRY HARRIS, if she shall survive me, the sum of $5,000.00.

W. To E.J. LANDRY, if he shall survive me, the sum of $5,000.00.

X. To LARRY BENSON, if he shall survive me, the sum of $5,000.00.

Y. To ANNABELL CURRIE, if she shall survive me, the sum of $5,000.00.

Z. To RAY and JACKIE HOCK, if they shall survive me, the sum of $5,000.00.

AA. To JESSE and LILLIE LeBLANC, if they shall survive me, the sum of $5,000.00.

BB. To BETTY JEAN BARRIOS, if she shall survive me, the sum of $2,500.00.

CC. To JAY ANN HORD, if she shall survive me, the sum of $2,500.00.

DD. To KATHLEEN HOCK, if she shall survive me, the sum of $2,500.00.

EE. To GRETCHEN HOCK, if she shall survive me, the sum of $2,500.00.

FF.  To JENNIFER LEWIS, if she shall survive me, the sum of $2,500.00.

GG.  To RACHEL LANGLINAIS, if she shall survive me, the sum of $2,500.00. *H.H. To DENISE BENSON, if she ShALL suRvive me, The SuM of $5,000.00.*  IV.

A.  Should my brother-in-law, AUGUST CHARLES BENSON, survive me, I direct that my Independent Executor grant to my said brother-in-law the option to buy all of my interest in the stock of Katy Road Chrysler-Plymouth, Inc., the price of such stock to be its current book value at the date of my death.  This option shall apply on an all or nothing basis and my brother-in-law shall not be entitled to purchase any of my interest less than my entire interest.  My Independent Executor shall grant such option to my brother-in-law in writing as soon as possible after issuance of his Letters Testamentary. Such option must be exercised by my brother-in-law within ninety (90) days from the date of grant or it shall lapse.  If my brother-in-law elects to exercise this option, the terms of the purchase price shall be a minimum of one-fifth (1/5) of the purchase price in cash payable within ninety (90) days after exercise with the balance of the purchase price represented by a promissory note with interest at eight percent (8%) secured by such stock with equal annual installments payable over a five (5) year period.

B.  Should my brother-in-law, JEROME JOSEPH BENSON, survive me, I direct that my Independent Executor grant to my said brother-in-law the option to buy all of my interest in the stock of Chrysler-Plymouth City Company, Inc., the price of such stock to be its current book value at the date of my death.  This option shall apply on an all or nothing basis and my brother-in-law shall not be entitled to purchase any of my interest less than my entire interest.  My Independent Executor shall grant such option to my brother-in-law in writing as soon as possible after issuance of his Letters Testamentary. Such option must be exercised by my brother-in-law within ninety (90) days from the date of grant or it shall lapse.  If my brother-in-law elects to exercise this option, the terms of the purchase shall be a minimum of one-fifth (1/5) of the purchase price in cash payable within ninety (90) days after exercise, with the balance of the purchase price represented by a promissory note with interest at eight percent (8%) secured by such stock with equal annual installments payable over a five (5) year period.

80122523

Should AUGUST CHARLES BENSON or JEROME JOSEPH BENSON fail to survive me or fail to exercise the option granted to him in this Article, in that event, then such option shall lapse and the property shall become part of my residuary estate and pass pursuant to the provisions of Article VI herein.

V.

Provided he shall survive me by thirty (30) days, I devise to my husband, THOMAS MILTON BENSON, JR. all of my interest in our ranch in Blanco County, Texas, to use during the term of his life. I direct that my said husband shall pay all charges incident to maintaining said property including, without limitation, all assessments, insurance premiums, taxes, and ordinary repairs. If my said husband shall fail to pay any of such charges, then any one or more of my issue may pay the same; and in such event such person or persons shall have a lien against said property in the amount so expended with interest thereon at the rate of six percent (6%) per annum until paid. If the premises are sold to a bona fide purchaser for value, such lien shall be deemed extinguished as to such real property but shall follow and attach to the proceeds of sale.

My husband shall not be required to account for or repair any waste, injury, or damage to or depreciation of such property, or to replace any part thereof which may be consumed, used up or destroyed, unless the same is attributable to her act or omission except as herein otherwise expressly provided.

I authorize my said husband, in his absolute discretion: (1) to lease said property for a period not exceeding his life, for such rental and upon such terms as he shall deem advisable; (2) to sell said property or any portion thereof at such time, for such price, and upon such terms, including terms of credit, as he shall deem advisable; and (3) to remove or raise any buildings or other improvements in said property. In the event that my said husband shall sell such property or any part thereof, his deed alone shall be sufficient to convey the complete title without any obligation on the part of the purchaser to look to the application of the proceeds of sale; provided, however, that the net proceeds from such sale shall be added to the trust estate created pursuant to Article VI herein to be administered and distributed in accordance

-5-

80122524

with the terms of such trust.

If said property remains unsold upon the death of my said husband, I devise it to such of my children (RENE BENSON, JEANNE MARIE BENSON and ROBERT CARTER BENSON) then living and children who have died leaving issue who are then living (such deceased child's share shall be divided per stirpes for his or her issue), share and share alike. If any of my issue shall be under the age of thirty (30) upon the death of my said husband, then the interest of such issue shall be added to the trust created for the benefit of such issue pursuant to Article VI herein to be administered and distributed in accordance with the terms of such trust.

VI.

I give, devise and bequeath all the rest, residue and remainder of the property that I own at the time of my death, real, personal and mixed, tangible and intangible, of whatsoever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this Will, and lapsed legacies and devises, to my Trustees hereinafter named to be held in trust upon the following terms and conditions:

A.   Out of the net income of the Trust, the following payments shall be made:

(1)   To my mother-in-law and father-in-law, CARMELITE MARIE PINTADO BENSON and THOMAS MILTON BENSON, if one or both of them should survive me, cash in the sum of $2,000.00 per month during the remainder of their joint lifetimes, and the survivor of them shall receive cash in the sum of $1,000.00 per month until such survivor's death. *$500.00*

(2)   To my mother, JEAN LANDRY, if she should survive me, cash in the sum of $1,000.00 per month during the remainder of her lifetime. *$500.00*

(3)   To my maid, VIOLA SEARCY, if she should survive me, cash in the sum of $300.00 per month during the remainder of her lifetime. *$150.00*

It is my desire that the above payments be commenced as soon after my death as practical. My Independent Executor in his sole and absolute discretion, may satisfy the foregoing bequests (if payable) by purchasing from some reputable life insurance company or bank a non-assignable annuity contract (without cash value and without any term certain) wherein and whereby such company will

-6-

80122525

agree to make the monthly payments hereinabove set out, and by delivering said annuity contract to the above designated beneficiaries in full satisfaction of said bequests.

All of the remaining net income of the Trust, to the extent that it is available, shall be paid to my husband, THOMAS MILTON BENSON, JR., if he shall survive me, during his lifetime in such installments and at such times as may be most convenient to the Trustees, but in no event less than quarterly. At the death of my husband, the accrued or undistributed income on hand shall be retained by the Trustee and shall not be apportioned or payable to his estate.

B.    During the lifetime of my said husband, the FROST NATIONAL BANK OF SAN ANTONIO, in its sole discretion as Trustee, shall have the power to pay from the principal such amounts as are in its discretion necessary to provide adequately for the health, maintenance and support of my said husband in the manner to which he is accustomed at the time of my death, and always taking into consideration the resources available to him from other sources, as it is my desire that such other resources be first expended.

C.    During the lifetime of my said husband, the Trustees shall have the power to pay to my children from the principal such amounts as are in their sole discretion necessary to provide adequately for the health, maintenance and support of my said children.

D.    Upon the death of my husband, THOMAS MILTON BENSON, JR., or if he fails to survive me and if my son, ROBERT CARTER BENSON, has survived me, then the trust shall be divided into as many equal shares as I have children (RENE BENSON, JEANNE MARIE BENSON and ROBERT CARTER BENSON) then living and children who have died leaving issue who are then living (such deceased child's share shall be divided per stirpes for his or her issue). The net income and principal from each beneficiary's share shall be used within the sole discretion of my Trustees for his or her support, maintenance and education.

STATE OF TEXAS COUNTY OF BEXAR
CERTIFY and which this certificate is attached may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.
ATTESTED
JAN 08 2015
GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
DEPUTY

-7-

80122526

E.   As each beneficiary of any trust created by Paragraph D of Article VI of this Will attains the age of thirty (30) years, the Trustees shall distribute one-half (1/2) of the then principal and undistributed income to him or her in fee simple.  As each beneficiary attains the age of thirty-five (35) years, the Trustees shall distribute all of the remaining principal and undistributed income to him or her in fee simple and the trust shall terminate as to such share.

F.   Should any beneficiary die prior to receiving his or her full distribution hereunder, then such beneficiary's share shall continue to be held under the same terms and conditions hereof for the benefit of such beneficiary's surviving issue per stirpes or absent same, for the equal benefit of such beneficiary's surviving brothers and/or sisters, or if any are deceased, for their surviving issue per stirpes, or absent same, for the benefit of my surviving issue per stirpes.

## VII.

The following general provisions shall be applicable to all trusts created hereunder.

A.   Should any interest of any trust not be vested absolutely within one (1) day less than twenty-one (21) years after the last to die among myself, my spouse and my issue living at the time of my death, then and in such event, any such unvested interest shall immediately vest in the then income beneficiary or beneficiaries despite any terms hereof to the contrary.

B.   Should any beneficiary of any trust be a minor or within the judgment of the Trustees of such trust incapable of managing his or her affairs, distributions to such beneficiary may be made to the beneficiary or to his or her parent, guardian or the person with whom such beneficiary lives, or applied direct for the benefit of such beneficiary without the necessity for guardianship or responsibility for the application for such distributions.

C.   Adopted persons shall be considered the same as natural born persons for all purposes.

JAN 08 2016

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY_____
         DEPUTY

-8-

80122527

D. The interest of any beneficiary in any trust shall be free from the interference or control of any creditor or spouse and shall not be susceptible to anticipation, alienation, assignment, sale, transfer, mortgage, pledge or subject to the debts, liabilities or obligations of such beneficiary or to attachment, garnishment, bankruptcy or any other legal or judicial processes.

E. Although I have provided in part for separate trusts, the assets of such trusts may remain commingled and unsegregated so long as proper and separate books and accounts are maintained.

F. The trusts shall be administered by the Trustees in accordance with the provisions of the Texas Trust Act (Article 7425b-1, et seq., Vernon's Revised Statutes of Texas and subsequent amendments thereto), except the terms of this instrument shall control when in conflict with the provisions of said Act and the Trustees shall always serve without bond or other security. The Trustees may purchase life insurance and annuities and the Trustees shall not be required to conform to the provisions of said Act with regard to depletion reserve on mineral properties, but may use their discretion in such matters. The Trustees in the investment and reinvestment of trust assets, shall not be restricted to investments authorized for Trustees nor feel compelled to diversify, but may within their full discretion invest in or may continue to invest in or participate in non-productive or speculative investments and business ventures as partner, joint-venturer, or stockholder; may sell, buy, borrow, mortgage, encumber and hypothecate; and may generally transact trust affairs with the freedom and absence of restraint enjoyed by an individual in the management of his own affairs.

G. Any successor Trustee (or Executor) shall be responsible only for the assets actually turned over to him or it and shall have no obligation to investigate or account for the stewardship of his or its predecessor.

## VIII.

I name, constitute and appoint, individually and in the order named as my Independent Executor, my husband, THOMAS MILTON BENSON, JR., then my brother-in-law, LARRY JOHN BENSON, and then the FROST NATIONAL BANK OF SAN ANTONIO, TEXAS. My Independent Executor and his successors shall serve without bond and in addition to the usual powers of such shall have all powers heretofore granted my Trustees, including the power to borrow and full power to sell, lease, mortgage or exchange all assets of my estate, and I direct that no action shall be taken in any court of competent jurisdiction with regard to my estate except the filing for probate of my Will and the filing of an inventory, appraisement and list of claims as required by law.

## IX.

I name, constitute and appoint, my husband, THOMAS MILTON BENSON, JR., and the FROST NATIONAL BANK OF SAN ANTONIO, TEXAS, as Co-Trustees of any trust created pursuant to the terms and provisions of this Will. Should my husband, THOMAS MILTON BENSON, JR., fail to serve for any reason, in that event, the FROST NATIONAL BANK OF SAN ANTONIO, TEXAS, shall serve alone, as Trustee.

## X.

For its services hereunder, the FROST NATIONAL BANK OF SAN ANTONIO, TEXAS shall be entitled to receive the same fee that it customarily receives for the same or similar services at the time such services are rendered.

## XI.

It is my desire and direction that STANLEY D. ROSENBERG be employed as attorney to represent my Executor in the event of my demise and that similarly he be employed to represent the various business entities which might comprise my estate. In the event that he for any reason cannot so serve, I then substitute in his place the law firm of OPPENHEIMER, ROSENBERG, KELLEHER & WHEATLEY, INC.

EXECUTED this _14_ day of _October_, 1976.

_Shirley L. Benson_
SHIRLEY L. BENSON, Testatrix

JAN 28 2015

-10-

80122529

The above instrument was signed, published and declared by the said SHIRLEY L. BENSON, the Testatrix, to be her Last Will and Testament, in our presence, and we, at her request and in her presence, and in the presence of each other, have signed and subscribed our names hereto as attesting witnesses.

_____
WITNESS

_____
WITNESS

_____
WITNESS

-11-

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
The page to which this certificate is affixed may have been lawfully found to recast confident as personal information public otherwise a full, true and correct copy of the original on file and correct bond in my office.
ATTESTED

JAN 0 8 2015

STATE OF TEXAS      §

COUNTY OF BEXAR     §          SELF-PROOF

        BEFORE ME, the undersigned authority, on this day personally
appeared   SHIRLEY L. BENSON    ,   LAURENT M. TULLY    ,

  ARNOLD GOLD    , and   ANNA TINNEY    ,
known to me to be the Testatrix and the witnesses, respectively, whose
names are subscribed to the annexed or foregoing instrument in
their respective capacities, and all of said persons being by
me duly sworn, the said   SHIRLEY L. BENSON   , Testatrix,
declared to me and to the said witnesses in my presence that said
instrument is her LAST WILL AND TESTAMENT, and that she had willingly
made and executed it as her free act and deed for the purpose therein
expressed; and the said witnesses, each on his oath, stated to me in
the presence and hearing of the said Testatrix, that the said
Testatrix had declared to them that said instrument is her LAST
WILL AND TESTAMENT, and that she executed same as such and wanted each
of them to sign it as a witness; and upon their oaths each witness
stated further that they did sign the same as witnesses in the
presence of the said Testatrix and at her request; that she was at
that time eighteen (18) years of age or over and was of sound mind;
and that each of said witnesses was then at least fourteen (14)
years of age.

                                    _____
                                    TESTATRIX

                                    _____
                                    Witness

                                    _____
                                    Witness

                                    _____
                                    Witness

        SUBSCRIBED AND ACKNOWLEDGED BEFORE ME by the said  SHIRLEY

  L. BENSON   , Testatrix, and SUBSCRIBED AND SWORN TO BEFORE ME

by the said   LAURENT M. TULLY   ,   ARNOLD GOLD    ,

and   ANNA TINNEY    , witnesses, this the  16th    day

of   October    1976  .

                                    _____
                                    Notary Public in and for Bexar
                                         County, Texas.
                                    MARK HOLLAND

155572

STATE OF TEXAS

COUNTY OF BEXAR

KNOW ALL MEN BY THESE PRESENTS:

I, SHIRLEY L. BENSON, of San Antonio, Texas, do make, publish and declare this to be the First Codicil to the Last Will and Testament executed by me on October 16, 1976, in the presence of LAURENT M. TULLY, ARNOLD GOLD and ANNA TINNEY.

I revoke and annul the bequest of stock in Tom Benson Company, Inc. made to my nephew, LEONARD T. BENSON, in Paragraph D of Article III of my said Last Will and Testament; and in lieu and substitution thereof I bequeath the sum of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00) to my Trustee to be held in trust for the benefit of STEPHEN BENSON and PRESTON BENSON (the children of my nephew, LEONARD T. BENSON), share and share alike, with the net income and principal from each beneficiary's share being used in the sole discretion of my Trustee for the support, maintenance and education of said beneficiary, until said beneficiary attains the age of thirty (30) years, at which time the Trustee shall distribute all of the remaining principal and undistributed income to said beneficiary in fee simple and the trust shall terminate as to such share.

In all other respects I ratify and confirm all of the provisions of my said Last Will and Testament dated October 16, 1976.

IN TESTIMONY WHEREOF, I sign, publish and declare this instrument to be the First Codicil to my Last Will and Testament this _2nd_ day of _February_ , 1978, at San Antonio, Texas.

_____
SHIRLEY L. BENSON, Testatrix

The foregoing instrument, was signed, published and declared by SHIRLEY L. BENSON, the Testatrix, to be the First Codicil to her Last Will and Testament, and we at her request and in her presence and in the presence of each other have hereunto subscribed our names as witnesses.

_____
Witness

_____
Witness

_____
Witness

JAN 08 2015

80122533

STATE OF TEXAS    ()

COUNTY OF BEXAR    ()      <u>SELF-PROOF</u>

BEFORE ME, the undersigned authority, on this day personally appeared

<u>Shirley L. Benson</u> , <u>Laurent M. Tully</u> ,

<u>Arnold Gold</u> , and <u>Anna Lea Tinney</u> ,

known to me to be the Testatrix and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and all of said persons being by me duly sworn, the said <u>Shirley L. Benson</u> , Testatrix, declared to me and to the said witnesses in my presence that said instrument is her LAST WILL AND TESTAMENT, and that she had willingly made and executed it as her free act and deed for the purpose therein expressed; and the said witnesses, each on his oath, stated to me in the presence and hearing of the said Testatrix, that the said Testatrix had declared to them that said instrument is her LAST WILL AND TESTAMENT, and that she executed same as such and wanted each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of the said Testatrix and at her request; that she was at that time eighteen (18) years of age or over and was of sound mind; and that each of said witnesses was then at least fourteen (14) years of age.

TESTATRIX

Witness

Witness

Witness

JAN 08 2015

SUBSCRIBED AND ACKNOWLEDGED BEFORE ME by the said _____

<u>Shirley L. Benson</u>, Testatrix, and SUBSCRIBED AND SWORN TO BEFORE

ME by the said <u>Laurent M. Tully</u> , <u>Arnold Gold</u> ,

and <u>Anna Lea Tinney</u> , witnesses, this <u>2nd</u>

day of <u>February</u> , 19<u>78</u>.

Notary Public, in and for
Bexar County, Texas

NOTARY PUBLIC

SECOND CODICIL     155572

OF

SHIRLEY L. BENSON

STATE OF TEXAS      §
                      §       KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF BEXAR     §

I, SHIRLEY L. BENSON, of San Antonio, Texas, do make publish and declare this to be the SECOND CODICIL to the Last Will and Testament executed by me on October 16, 1976, in the presence of LAURENT M. TULLY, ARNOLD GOLD and ANNA TINNEY.

I.

I hereby amend Article III of my Last Will and Testament by adding the following provisions after subparagraph H.H of that Article:

I.I. To RICHARD STAGG, if he shall survive me, the sum of Five Thousand Dollars ($5,000.00).

J.J. To LAURIE LANDRI, if she shall survive me, the sum of Five Thousand Dollars ($5,000.00).

II.

I hereby delete in its entirety, Article IV of my Last Will and Testament.

III.

I hereby revoke the last full paragraph of Article V which begins with the words "if said property remains unsold . . . and in lieu thereof I state the following:

If said property remains unsold upon the death of my said husband, I devise it to such of my children (RENEE BENSON, JEANNE MARIE BENSON, AND ROBERT CARTER BENSON) then living or if deceased, as such child may specifically appoint by his Last Will and Testament, excluding the right to appoint said property to his/her estate or his/her creditors; or if such child fails to specifically appoint such beneficiary, and has died

JAN 28 2015

SLL
MKA

80122536

leaving issue who are then living, then such deceased child's share shall be divided per stirpes for his or her issue, share and share alike. If any of my issue shall be under the age of thirty-five (35) upon the death of my said husband, then the interest of such issue shall be added to the trust created for the benefit of such issue pursuant to Article VI herein to be administered and distributed in accordance with the terms of such trust.

IV.

I hereby add as subparagraph 4 of Paragraph A of Article VI of my Last Will and Testament:

To Annabell Currie, if she should survive me, cash in the sum of Five Hundred Dollars ($500.00) per month during the remainder of her lifetime.

V.

I hereby delete Paragraph D of Article VI of my Last Will and Testament and substitute in lieu thereof the following:

Upon the death of my husband, THOMAS MILTON BENSON, JR., or if he fails to survive me, the trust shall be divided into as many equal shares as I have children (RENEE BENSON, JEANNE MARIE BENSON, and ROBERT CARTER BENSON) then living or if deceased, as such child may specifically appoint by his or her Last Will and Testament, excluding the right to appoint said property to his/her estate or his/her creditors; or if such child fails to specifically appoint such beneficiary, and has died leaving issue who are then living, then such deceased child's share shall be divided per stirpes for his or her issue, share and share alike. The net income and principal from each beneficiary's share shall be used within the sole discretion of my Trustee for his or her support, maintenance and education.

STATE OF TEXAS COUNTY OF BEXAR
CERTIFIED COPY CERTIFICATE
This page to which this certificate is affixed may have been lawfully altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.
ATTESTED

JAN 0 8 2015

(2)

## VI.

I hereby amend Paragraph E of Article VI by changing the age of thirty (30) years to age thirty-five (35) years and the age of thirty-five (35) years to the age of forty (40) years. All other provisions of Paragraph E of Article VI shall remain intact.

## VII.

I hereby delete Paragraph F of Article VI and substitute therein the following:

Should any beneficiary die prior to receiving his or her full distribution hereunder, then such beneficiary's share shall continue to be held under the same terms and conditions hereof for the benefit of such persons that the beneficiary may specifically appoint by his Last Will and Testament, excluding the right to appoint said property to his/her estate or his/her creditors, or absence same, for the benefit of such beneficiary's surviving issue per stirpes, or absence same, for the equal benefit of such beneficiary's surviving brothers and/or sisters, or if any are deceased, for their surviving issue per stirpes, or absence same, to my heirs at law in fee simple.

## VIII.

I hereby amend Article VIII of my Last Will and Testament by deleting therein my brother-in-law, LARRY JOHN BENSON, as successor Trustee and substitute therein my daughter, RENEE BENSON, as successor Trustee to THOMAS MILTON BENSON, JR. All other provisions of said Article shall remain intact.

I amend Article IX of my Last Will and Testament by removing the FROST NATIONAL BANK as Co-Trustee of my Last Will and Testament and appoint STANLEY D. ROSENBERG as Co-Trustee solely for the purpose of acting under Paragraph B and C of Article VI. I retain as Trustee my husband,

(3)

80122538

THOMAS MILTON BENSON, JR., as Trustee of any Trust created pursuant to the terms and provisions of my Will. Should my husband, THOMAS MILTON BENSON, JR., or STANLEY D. ROSENBERG, fail to serve, or resign for any reason, in that event, I appoint my daughter, RENEE BENSON, and then the FROST NATIONAL BANK, to serve as successor Trustee in the capacity rendered vacant by such failure or resignation to serve by the Trustee or Co-Trustee.

In all other respects I ratify and confirm all of the provisions of my said Last Will and Testament dated October 16, 1976 and the First Codicil executed February 2, 1978.

IN TESTIMONY WHEREOF, I sign, publish and declare this instrument to be the Second Codicil to my Last Will and Testament this ___3___ day of __October__, 1980, at San Antonio, Texas.

_____
SHIRLEY L. BENSON, Testatrix

The foregoing instrument, was signed, published, and declared by SHIRLEY L. BENSON, the Testatrix, to be the Second Codicil to her Last Will and Testament, and we at her request and in her presence and in the presence of each other have hereunto subscribed our names as witnesses.

_____
WITNESS Sandra L. Lindstrom
149 Esser Rd
Boerne Tx 78006
Address

_____
WITNESS Melissa K. Diosdado
222 Loma Park - SA Tx 78228
Address

_____
WITNESS
S.A Texas 78230
Address

JAN 08 2015

(4)

80122539

THE STATE OF TEXAS     §
                       §          SELF-PROOF
COUNTY OF BEXAR        §

      BEFORE ME, the undersigned authority, on this day personally appeared SHIRLEY L. BENSON , Sandra L. Lindstrom, Melissa K. Diosdado , and Richard N. Weinstein , known to me to be the Testatrix and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and all of said persons being by me duly sworn, the said SHIRLEY L. BENSON, Testatrix, declared to me and to the said witnesses in my presence that said instrument is her SECOND CODICIL TO HER LAST WILL AND TESTAMENT, and that she had willingly made and executed it as her free act and deed for the purpose therein expressed; and the said witnesses, each on his oath, stated to me in the presence and hearing of the said instrument is her SECOND CODICIL TO HER LAST WILL AND TESTAMENT, and that she executed same as such and wanted each of them to sign the same as witnesses in the presence of the said Testatrix and at her request; that she was at that time eighteen (18) years of age or over and was of sound mind; and that each of said witnesses was then at least fourteen (14) years of age.

_____
SHIRLEY L. BENSON,     Testatrix

x _Sandra L. Lindstrom_____
Witness

x _Melissa K. Diosdado_____
Witness

_____
Witness

      SUBSCRIBED AND ACNOWLEDGED BEFORE ME by the said SHIRLEY L. BENSON ,Testatrix, and SUBSCRIBED AND SWORN TO BEFORE ME by the said ___Sandra L. Lindstrom___, ___Melissa K. Diosdado___ and ___Richard N. Weinstein___, witnesses, this _3rd_ day of _October_, 1980.

_____
Notary Public in and for
the State of Texas

DOLORES G. QUINTANA
Notary Public
My Commission Expires _4-15-84_

JAN 08 2015

(5)

80122540